UNITED STATES of America, Plaintiff–Appellee,

v.

Bill J. PATRICK (89–6410/6443; 91–5075); Delmus G. Gross (89–6411); Joseph A. Mohwish (89–6412/6444; 91–5076); Kathy Mohwish (91–5243); Sue Bell Sheets (91–5243), Defendants-Appellants.

Nos. 89–6410 to 89–6412, 89–6443, 89–6444, 91–5075, 91–5076 and 91–5243.

United States Court of Appeals, Sixth Circuit.

Argued Oct. 1, 1991.

Decided May 20, 1992.

Rehearing En Banc Denied July 6, 1992.

Rehearing Denied July 7, 1992.

Louis DeFalaise, U.S. Atty., James Zerhusen (argued and briefed), Robert F. Trevey, Frances E. Catron, Asst. U.S. Attys., Lexington, Ky., for U.S.

Michael T. Palermo (briefed), Russell J. Baldani (briefed), William L. Summers, Lexington, Ky., Bruce E. Pashley (argued), Marietta, Ga., for Joseph Mohwish.

Charles R. Coy, James T. Gilbert (argued and briefed), Coy, Gilbert & Gilbert, Richmond, Ky., for Delmus G. Gross.

Bruce E. Pashley (argued and briefed), Marietta, Ga., for Kathy Mohwish and Sue Bell Sheets.

W. Robert Lotz (argued and briefed), Covington, Ky., for Bill J. Patrick.

Before: KENNEDY and SUHRHEINRICH, Circuit Judges and ENGEL, Senior Circuit Judge.

SUHRHEINRICH, Circuit Judge.

Joseph Mohwish and Bill Patrick ran a prosperous drug distribution and money laundering business. Delmus Gross's car dealership was used to launder the drug proceeds. It was Patrick's job to secure cocaine and marijuana and to locate buyers. Mohwish coordinated the drug operation with Patrick and stored cocaine. Mohwish also owned a holding company for several of his other corporations, including a window manufacturing firm called Season Sash. Mohwish and Gross used these corporations on behalf of their money laundering activity.

Gross and Mohwish appeal convictions for acting as accomplices to violations of the Currency Transactions Reporting Act ("CTRA"), 31 U.S.C. §§ 5313, 5322. Gross, Mohwish, and Patrick appeal convictions for conspiracy to violate the CTRA. This same trio requests a new trial because of juror misconduct and an assortment of evidentiary and other errors. Mohwish and Patrick appeal convictions for operating a continuing criminal enterprise ("CCE"). Kathy Mohwish and Sue Bell Sheets challenge a forfeiture order entered pursuant to Joseph Mohwish's CCE conviction. We affirm in part, and reverse and remand in part.

I

Gross and Mohwish were convicted as accomplices for causing the Union Bank & Trust Co. to violate the CTRA. Federal regulations require financial institutions to file a currency transaction report for each cash transaction of more than $10,000. 31 CFR § 103.22(a). In addition, 31 U.S.C. § 5322 makes it a criminal offense to knowingly violate section 103.22(a). The CTRA originally applied only to financial institutions.[1]

Gross and Mohwish used their respective businesses to prevent detection of drug sales and to avoid the CTRA. Mohwish periodically directed Season Sash's controller to make interest payments to Gross. Gross would then deposit these checks and return the funds to Mohwish, Patrick, or one of the companies under Mohwish's control.

Gross instructed his bookkeeper to put less than $10,000 on each deposit slip. The records show seventeen transactions in which Gross received a large cash payment from Mohwish or one of his companies. For each payment, there is an equivalent deposit into Gross's bank account and, shortly thereafter, a check issued to Mohwish, or an interest he controls, for an identical or similar amount.

---

1. The CTRA has since been amended to encompass depositors. *See* 31 U.S.C. § 5324.

As depositors, Gross and Mohwish could not be held directly liable for violating the CTRA. Instead, they were charged as accomplices under 18 U.S.C. § 2(b) for causing Union Bank & Trust to fail to file a currency transaction report. 31 U.S.C. § 5322.

■ A violation of sections 5313 and 5322 requires a knowing failure to report. Currency transactions are structured to prevent the financial institution from becoming aware of its reporting obligation. Consequently, the financial institution does not itself knowingly violate the reporting requirement and cannot be held criminally liable. Since the principal, the financial institution, did not commit a crime, the customer who structures transactions cannot be held criminally liable as an accomplice for aiding, abetting, or causing a crime. *United States v. Gimbel,* 830 F.2d 621, 624–26 (7th Cir.1987); *United States v. Larson,* 796 F.2d 244, 246–47 (8th Cir. 1986); *United States v. Reinis,* 794 F.2d 506, 507 (9th Cir.1986); *United States v. Anzalone,* 766 F.2d 676, 682–83 (1st Cir. 1985).

■ * However, accomplice liability exists where the financial institution or an employee has knowledge of the structuring, even though the knowledge is not held by an employee with responsibility for reporting. *See United States v. Hayes,* 827 F.2d 469, 472 (9th Cir.1987). Union Bank & Trust vice-president David Maynard admitted accepting a "temporary" cash deposit of $100,000 without reporting it. Shortly after Maynard returned this money, Gross sent it back to the bank. Gross directed Maynard to issue cashier's checks in this amount and to structure the transaction to avoid the reporting requirement. Maynard complied although he knew it to be illegal.

■ Count 15 of the indictment charged Gross and Mohwish with causing the bank's failure to file a currency transaction report relating to this transaction. Because Union Bank & Trust acted knowingly, we affirm these convictions. We reverse the CTRA convictions brought under counts 14 and 16–30 because there is no

evidence that the principal acted knowingly.

■ Mohwish and Gross claim that the law against structuring is unconstitutionally vague as applied to them. We join other circuits in rejecting this argument. *See, e.g., United States v. Richeson,* 825 F.2d 17 (4th Cir.1987).

Next we consider a challenge brought by Gross, Mohwish, and Patrick to their convictions, under count 13, for conspiracy to violate the CTRA. They allege insufficient evidence of agreement. It is well-settled that "[n]o formal or express agreement is required. The agreement may be inferred from the acts done in furtherance of the conspiracy." *United States v. Hitow,* 889 F.2d 1573, 1577 (6th Cir.1989).

■ Ample evidence of agreement was presented against each defendant. Mohwish periodically stored Patrick's cocaine and managed his financial affairs. The facts show that Gross frequently laundered cash for Mohwish. Mohwish, in turn, paid Patrick as a Season Sash employee even though Patrick did no work for the company. Gross directed Maynard to process a cash transaction of $100,000 without filing a currency transaction report. This transaction was part of the money laundering operation, an essential element of the drug distribution enterprise. *See United States v. Orozco–Prada,* 732 F.2d 1076, 1080 (2d Cir.), *cert. denied,* 469 U.S. 845, 105 S.Ct. 154, 83 L.Ed.2d 92 (1984). Therefore, we affirm the convictions of Patrick, Mohwish, and Gross for conspiracy to violate the CTRA.

■ Gross, Mohwish, and Patrick also assign error to the court's refusal to instruct the jury that they had no duty to file currency transaction reports. However, the court did inform the jury of relevant statutory provisions placing the reporting requirement on the bank. The jury instructions clearly explained that the defendants could be convicted only if they conspired to cause the reporting requirement to be unfulfilled in violation of 31 U.S.C. § 5322. Under the circumstances, there is no re-

versible error. *See United States v. Townsend,* 796 F.2d 158, 163 (6th Cir.1986).

## II

■ Patrick and Mohwish appeal their CCE convictions. It is a crime to obtain substantial income by engaging in a continuing series of drug violations "in concert with five or more other persons" whom the defendant has organized, managed, or supervised. 21 U.S.C. § 848; *United States v. Davis,* 809 F.2d 1194, 1203 (6th Cir.), *cert. denied,* 483 U.S. 1007, 107 S.Ct. 3234, 97 L.Ed.2d 740 (1987). Patrick and Mohwish deny organizing, managing, or supervising five other persons. The identity of the five persons chosen by the jury need not be unanimously agreed upon. *United States v. English,* 925 F.2d 154, 157–59 (6th Cir.), *cert. denied,* —— U.S. ——, 111 S.Ct. 2810, 115 L.Ed.2d 983 (1991). However, there must be five persons who a jury could have found were organized, managed, or supervised by each defendant. *Davis,* 809 F.2d at 1204.

■ The first potential CCE scenario involves the extensive drug distribution operation of William Lawson. The evidence overwhelmingly proved that Patrick was one of Lawson's suppliers. But the mere existence of a buyer-seller relationship, without more, is insufficient to prove organization, management, or supervision. *See, e.g., English,* 925 F.2d at 157; *United States v. Butler,* 885 F.2d 195, 201 (4th Cir.1989). There is no evidence of anything beyond a buyer-seller relationship between Patrick or Mohwish and Lawson. Neither Patrick nor Mohwish was involved in organizing Lawson's enterprise. They did not dictate Lawson's prices, customers, or territory. Thus, neither Patrick nor Mohwish organized, managed, or supervised Lawson or any of Lawson's underlings.

■ A second CCE scenario points to Kathy Mohwish. Kathy was acquitted of conspiring to distribute drugs and launder money. One element of a CCE violation is that the defendant act "in concert with" the person organized, managed, or supervised. The phrase "in concert with" has been interpreted as requiring an agreement or conspiracy. *See United States v. Sinito,* 723 F.2d 1250, 1261 (6th Cir.1983), *cert. denied,* 469 U.S. 817, 105 S.Ct. 86, 83 L.Ed.2d 33 (1984); *cf. Jeffers v. United States,* 432 U.S. 137, 148–50, 97 S.Ct. 2207, 2214–16, 53 L.Ed.2d 168 (1977). Since Kathy was acquitted of conspiracy, neither Joseph Mohwish nor Bill Patrick could have acted in concert with her.

■ The government contends that Patrick's and Mohwish's interactions with other parties also raise the CCE specter. For example, a building contractor named Raymond Butler took cash for work performed at Season Sash. Elmer Haas sold his Florida condominium to Mohwish and accepted a substantial part of the $170,000 purchase price in cash. Gross's bookkeeper, Jean Smith, complied with instructions to avoid making cash deposits over $10,000.

The prosecution presented no evidence that Butler, Haas, or Smith had any knowledge of either the drug distribution or the money laundering activity, much less that they agreed or conspired with Patrick or Mohwish. Butler, Haas, and Smith were at most "innocent dupes" whose conduct unwittingly advanced the illicit purposes of Patrick, Mohwish, and Gross. This falls short of acting "in concert with" under the CCE. *See Jeffers,* 432 U.S. at 148 n. 14, 97 S.Ct. at 2215 n. 14.

■ Eduardo Ruiz also cannot be included. The jury might have inferred that Ruiz was somehow involved in the drug operation, given that Mohwish put him on the payroll of Production Leasing for $1,000 a week, although he would appear only sporadically. This, however, is not enough to satisfy the CCE. In addition to criminal conduct, the CCE involves a relational element: that of organization, management, or supervision. The record supplies no basis for an inference regarding such a relationship between Ruiz and Mohwish or Patrick. At best, the record supports an inference that Ruiz supplied drugs for the enterprise. A supplier is not ordinarily organized, managed, or supervised by his customers. *See United States*

*v. Jerome,* 942 F.2d 1328, 1331 (9th Cir. 1991).

■ A more persuasive CCE possibility concerns the activity of Kenny Patrick, Tommy Lancaster, and Greg Fender. Bill Patrick managed his son, Kenny. On at least one occasion, Kenny acted as a courier for his father by delivering the proceeds of a drug deal between Bill Patrick and Lawson. Kenny and two associates, Lancaster and Fender, also engaged in the distribution and sale of narcotics. Bill Patrick was acquitted of aiding and abetting this operation. His acquittal as an accomplice, however, does not preclude Patrick's CCE conviction as a manager, supervisor, or organizer of Kenny's operation because inconsistent jury verdicts may not form the basis for setting aside proper convictions on other counts. *United States v. Powell,* 469 U.S. 57, 105 S.Ct. 471, 83 L.Ed.2d 461 (1984).

■ Our task is to review the sufficiency of the evidence supporting the CCE convictions of Patrick and Mohwish without regard to Patrick's acquittal on the conspiracy charge. *Id.* at 67, 105 S.Ct. at 477–78. The evidence indicated that Bill Patrick organized his son Kenny's delivery of drug money on one occasion. On another occasion, Kenny distributed "California cocaine" to Fender at the same time that his father allegedly acquired "California cocaine" from Lawson. Bill Patrick was present when Kenny and Lancaster packaged cocaine in the basement of his house and on one occasion when Kenny received payment from Fender. Viewing this evidence in the light most favorable to the prosecution, we conclude that the jury could infer that Bill Patrick organized Kenny. *See United States v. Adamo,* 742 F.2d 927, 933–34 (6th Cir.1984), *cert. denied,* 469

U.S. 1193, 105 S.Ct. 971, 83 L.Ed.2d 975 (1985).

■ It is well established that an organizer is not "necessarily able to control those whom he or she organizes." *United States v. Ray,* 731 F.2d 1361, 1367 (9th Cir.1984). Rather, "an organizer can be defined as a person who puts together a number of people engaged in separate activities and arranges them in their activities in one essentially orderly operation or enterprise." *United States v. Apodaca,* 843 F.2d 421, 426 (10th Cir.), *cert. denied,* 488 U.S. 932, 109 S.Ct. 325, 102 L.Ed.2d 342 (1988). Here, Bill Patrick controlled Kenny and observed Kenny and Lancaster packaging cocaine in his basement. This is sufficient evidence for the jury to infer that Bill Patrick organized Lancaster through his control over Kenny. "[A]n individual need not have direct communications with participants in order to be their supervisor.... If a defendant personally hires only the foreman, that defendant is still responsible for organizing the individuals hired by the foreman to work as the crew." *United States v. Rosenthal,* 793 F.2d 1214, 1226 (11th Cir.1986), *cert. denied,* 480 U.S. 919, 107 S.Ct. 1377, 94 L.Ed.2d 692 (1987).

Lastly, the jury could find that Patrick and Mohwish organized, managed, or supervised Delmus Gross and David Maynard,[2] and that Mohwish organized Patrick. Even if we accept that Patrick and Mohwish each organized, managed, or supervised Gross, Maynard, Kenny Patrick and Lancaster, this yields only four such persons for Patrick, too few to sustain a conviction under the CCE. We therefore reverse the CCE conviction of Bill Patrick.

Although the government contends that Patrick and Mohwish organized each other, the evidence indicates that it was Mohwish, who owned or controlled the corporations,

---

**2.** The CCE applies when parties act in concert to violate the narcotics laws. Gross and Maynard engaged in money laundering. Since this is an integral part of a drug enterprise, a jury is entitled to infer from such conduct a conspiracy to aid and abet the violation of the narcotics laws. *See United States v. Orozco–Prada,* 732 F.2d 1076, 1080–81 (2d Cir.), *cert. denied,* 469 U.S. 845, 105 S.Ct. 154, 83 L.Ed.2d 92 (1984). Here, Gross was acquitted of conspiracy to vio-

late the narcotics laws but convicted of money laundering. As noted above, however, we review the sufficiency of the evidence supporting inconsistent verdicts separately. *Powell,* 469 U.S. at 67, 105 S.Ct. at 477–78. We find ample evidence to support the jury's finding that Gross's conduct was taken "in concert with" Mohwish's and Patrick's violation of the narcotics laws.

supervised the money laundering, and received a larger share of the proceeds, who controlled Patrick. Counting Gross, Maynard, Bill Patrick, and through him, Kenny and Lancaster, Mohwish controlled five individuals. Accordingly, we affirm Mohwish's CCE conviction.

## III

We next consider the third party challenge to the forfeiture order entered pursuant to Mohwish's CCE conviction. Under 21 U.S.C. § 853(n)(2), third parties must file a petition within thirty days of notice of the forfeiture order. Section 853(n)(4) directs that, if practicable, the hearing should be held within 30 days of the filing of the petition. Section 853(k) bars all intervention not taken pursuant to section 853(n). However, section 853(h) allows a third party to stay the forfeiture if proceeding with it would irreparably harm the petitioner.

The verdict against Gross, Mohwish, and Patrick was returned on August 24, 1989. On September 11, 1989, the court issued seizure warrants for the properties indicated in Counts 1 and 2 of the indictment. On September 28, 1989, Kathy Mohwish filed a Third Party Interest Petition to challenge the seizure. The next day, Sue Bell Sheets and Kathy Mohwish, as trustee for the Joseph Allen Mohwish II Trust, filed Third Party Interest Petitions. These petitions were also signed by Frank DeSalvo, attorney for Joseph Mohwish. A hearing on the petitions was scheduled for November 3, 1989. When the petitions of Mohwish and Sheets were called, DeSalvo withdrew the petitions on their behalf. On May 9, 1990, petitioners filed a motion to reinstate their third party petitions. The court denied these motions on January 29, 1991.

Petitioners argue that the government is estopped from proceeding with the forfeiture action. On August 28, 1989, attorney DeSalvo stated, "it's my understanding that an appeal would suspend any seizures until completion of that appeal and I want the record to reflect that we fully intend to appeal the verdict of the jury both as to guilt and particularly as to guilt of Count 1

and as to forfeiture." This statement does not support the petitioners' estoppel argument. Petitioners contend the November 3 withdrawal of their petition was made in the belief that the appeal stayed the forfeiture. Further, they contend that because neither the district court nor the assistant U.S. attorney corrected this erroneous belief when DeSalvo expressed it, the government is estopped from proceeding with the forfeiture. The district court rejected this argument and refused to reinstate the petitions.

This finding can only be reversed if it was an abuse of discretion. *See United States v. One 1972 44' Striker, Bonanza*, 753 F.2d 867, 869 (11th Cir.1985). The district court found that since the petitioners knew to file a petition within thirty days, they were aware that the petition was required to allow them to intervene in the action. This finding was not an abuse of discretion. Moreover, parties who assert estoppel must prove that their reliance was induced. *See* Restatement (Second) of Contracts § 90 (1979). There is no evidence of inducement here.

The Seventh Circuit has established a procedure for forfeiture cases where, due to procedural considerations, the trial court did not conduct a hearing on the merits. In such cases, the trial court is to conduct an independent review of its forfeiture order. *United States v. De Ortiz*, 910 F.2d 376, 384 (7th Cir.1990). The court here conducted such a review and concluded that "these petitioners have no right to any interests in the properties." This finding is not clearly erroneous. *See United States v. Reckmeyer*, 836 F.2d 200, 204 (4th Cir.1987).

Petitioners also wish to stay the forfeiture proceedings. 21 U.S.C. § 853(h) allows this if they can show that they would otherwise suffer irreparable harm, injury, or loss. The provisions of section 853(k), which bar intervention other than under section 853(n), do not apply to section 853(h) because section 853(h) only stays the forfeiture proceedings. However, there is no reason to stay the forfei-

ture proceedings here because we affirm Mohwish's CCE conviction and because we uphold the district court's finding that the petitioners have no valid claim to the forfeited property.

## IV

Gross, Mohwish, and Patrick identify juror misconduct as the basis for challenging the denial of their motion for a new trial. Denials of a motion for new trial will be upheld absent abuse of discretion. *Budoff v. Holiday Inns, Inc.*, 732 F.2d 1523, 1525 (6th Cir.1984). The defendants submit that juror Cunningham responded inappropriately to several questions posed to the venire panel, thereby withholding information the questions were designed to elicit. This allegedly led to a Sixth Amendment violation by depriving the defendants of the ability to exercise intelligently their peremptory challenges.

A prospective juror's failure to disclose material information is grounds for a new trial if it demonstrates bias. *McCoy v. Goldston*, 652 F.2d 654, 658–59 (6th Cir.1981). If a juror is found to have deliberately concealed material information, bias may be inferred. If, however, information is not concealed deliberately, the movant must show actual bias. *Cunningham v. Sears, Roebuck & Co.*, 854 F.2d 914, 916 (6th Cir.1988).

The venire panel was read a list of witness names and instructed to notify the court of any acquaintances on the list. Juror Cunningham did not respond when "James Dennis of Clay City" was read. After Dennis testified, Cunningham told another juror that he recognized him and that Dennis sold insurance. When asked why he did not respond during voir dire, Cunningham said he knew Dennis only as "James Ed Dennis". Acceptance of this reply was not an abuse of discretion. *See Cunningham*, 854 F.2d at 916.

The venire panel was also queried about any relatives or close friends in the law enforcement community. Cunningham failed to disclose that his brother was a deputy jailer and that he was a friend of a deceased former sheriff. Cunningham was unaware of a jailer's involvement with law enforcement. He thought his friendship with the former sheriff was mooted by the latter's death. On these facts it was no abuse of discretion to find that the failure to disclose was not deliberate.

The venire panel's knowledge of or familiarity with Delmus Gross was examined. Cunningham had no personal contact with Gross but knew that his brother had purchased a truck from Gross's car dealership. Cunningham was not required to report incidental family dealings of this kind.

Inquiries were made of the venire panel's dealings with or knowledge of Season Sash. Unbeknownst to Cunningham, his first cousin was employed by Season Sash. Cunningham testified that he was not aware of his cousin's employment with Season Sash until after the trial. This information could not have been concealed or of consequence to Cunningham's deliberations.

Finally, venire panel members were asked if any close relatives or friends had been a criminal defendant. Cunningham's brother was once charged with possession of gambling records and pled guilty to a misdemeanor. Cunningham first stated that he did not answer because the question asked for a felony, not a misdemeanor. When informed that the question referred to any criminal case, Cunningham responded that he did not think the question applied to a plea bargain. The decision to believe Cunningham does not constitute an abuse of discretion.

Since Cunningham did not deliberately conceal information, bias may not be inferred. For the defendants to receive a new trial, actual bias must be shown. The record discloses no sign of Cunningham's actual bias.

## V

The defendants' remaining contentions need not detain us long. The defendants claim they were not told of the identity of several witnesses prior to trial. The denial of a bill of particulars lies within

the discretion of the trial court. *United States v. Hawkins*, 661 F.2d 436, 452 (5th Cir.1981), *cert. denied*, 456 U.S. 991, 102 S.Ct. 2274, 73 L.Ed.2d 1287 (1982). The indictment informed the defendants regarding the subject matter of the testimony and no prejudice resulted. *See United States v. Burt*, 765 F.2d 1364, 1367 (9th Cir.1985).

■ Patrick and Mohwish moved for severance after the admission of a statement made by Gross. The motion was denied and was not renewed at the close of the evidence. It was thereby waived. *United States v. Swift*, 809 F.2d 320, 323 (6th Cir.1987).

■ Rebecca Johnson testified that her former husband described Patrick as "the big man." Patrick describes this as inadmissible hearsay. The record discloses no objection to either the question or the response. Thus, Patrick has failed to preserve this issue for appeal.

■ The *Brady* doctrine requires the prosecution to disclose material exculpatory evidence to a criminal defendant. *Brady v. Maryland*, 373 U.S. 83, 86–87, 83 S.Ct. 1194, 1196–97, 10 L.Ed.2d 215 (1963). Patrick claims that the delay in disclosing the fraud conviction of government witness Carroll violated *Brady*. Delay only violates *Brady* when the delay itself causes prejudice. *United States v. Word*, 806 F.2d 658, 665 (6th Cir.1986), *cert. denied*, 480 U.S. 922, 107 S.Ct. 1383, 94 L.Ed.2d 697 (1987). Although Carroll's testimony hurt Patrick, no prejudice was proved.

■ The Jencks Act, 18 U.S.C. § 3500, requires the prosecution to supply the defense with any material statement made by a witness to the government that is signed or otherwise verified by the declarant. Patrick complains that statements made by witness Klein were not timely made available to him. The court offered to recall Klein for further cross examination when his Jencks statements were disclosed. There is no prejudice from a tardy Jencks disclosure if the court gives the defendant the opportunity, upon disclosure, to recall the witness for cross examination. *United States v. Valera*, 845 F.2d 923 (11th Cir.

1988), *cert. denied*, 490 U.S. 1046, 109 S.Ct. 1953, 104 L.Ed.2d 422 (1989).

■ Patrick also alleges that FBI notes of various witness interviews were undisclosed. The notes were subsequently lost. There is no showing that the notes were verified or adopted by the witnesses and so their Jencks status is unclear. In addition, there is no evidence that the unavailability of these notes was the result of bad faith by the prosecution. *See United States v. Vella*, 562 F.2d 275, 276 (3d Cir.1977) (although the government should maintain such notes, there is no prejudice absent bad faith in failing to do so), *cert. denied*, 434 U.S. 1074, 98 S.Ct. 1262, 55 L.Ed.2d 779 (1978).

## VI

To sum up, the CCE conviction of Bill Patrick is reversed and remanded to the district court with instructions to vacate. The CTRA convictions of Delmus Gross and Joseph Mohwish brought under Counts 14 and 16–30 are reversed and remanded to the district court with instructions to vacate. We affirm in all other respects.

KENNEDY, Circuit Judge, concurring.

I concur in the Court's opinion and write separately only because I would hold that the jury could include Ruiz as one of those organized and controlled by Joseph Mohwish.

## ORDER

The court having received a petition for rehearing en banc, and the petition having been circulated not only to the original panel members but also to all other active judges of this court, and no judge of this court having requested a vote on the suggestion for rehearing en banc, the petition for rehearing has been referred to the original hearing panel.

The panel has further reviewed the petition for rehearing and concludes that the issues raised in the petition were fully considered upon the original submission and

decision of the case. Accordingly, the petition is denied.