**Paul Matthew ZERKA, Plaintiff–Appellant,**

v.

**Harlon GREEN, Defendant–Appellee.**

**No. 93–2111.**

United States Court of Appeals, Sixth Circuit.

Argued Sept. 23, 1994.

Decided March 22, 1995.

Tammy J. Reiss (argued and briefed), Southfield, MI, Milton H. Greenman, Thurswell, Chayet & Weiner, Southfield, MI, for plaintiff-appellant.

Frederick L. Schmoll, III (argued and briefed), Flint, MI, for defendant-appellee.

Before: MARTIN and BOGGS, Circuit Judges; FORESTER, District Judge *.

BOGGS, Circuit Judge.

This case requires us to determine whether a new trial is required when a court discovers that a juror has intentionally concealed information in order to be selected for a civil jury. We affirm the district court's conclusion, reached after an evidentiary

* The Honorable Karl S. Forester, United States District Judge for the Eastern District of Kentucky, sitting by designation.

hearing, that a new trial is not required in the circumstances of this case.

## I

Plaintiff Paul Matthew Zerka sued Harlon Green, a City of Flint Police Officer, pursuant to 42 U.S.C. § 1983. Zerka alleged that Green used excessive force during a confrontation on May 14, 1989, which arose when Green was working off-duty as a security guard for a nightclub. The case went to trial in April 1993, and after nearly five days of testimony, an eight-person jury returned a verdict for Green.

Immediately following the verdict, plaintiff's counsel, Milton Greenman, spoke to several jurors to gain their perspectives on the case. The precise circumstances of what next occurred are murky, as there are ambiguities and inconsistencies in the witnesses' accounts. Nevertheless, certain elements are not in dispute: As Greenman and two jurors, Anthony Phillpotts and Ronald Pemberton, were walking out of the courthouse together, Phillpotts indicated that he had not offered certain information during *voir dire*. Phillpotts said that he had wanted to be on the jury, and he had learned from an earlier jury experience that the answers to *voir dire* questions determined who would sit on the panel. However, Phillpotts professed that he felt justified in not speaking because he knew he could be an objective juror. Immediately after this exchange, Greenman recorded a sworn statement recounting these events.[1]

A portion of the transcript best reflects the circumstances of the *voir dire;* the transcript does not specify which prospective jurors spoke, although certain jurors can be identified on the basis of other statements in the transcript.

THE COURT: Anything in the experience either of you just related that would affect your ability to be fair and impartial in this case? Do any of you have any present or prior relationships with any law enforcement agency, and that would include either yourself, your spouses, or members of your family?

Yes, sir.

JUROR: No members of family, but a good friend of mine is a police officer in Jackson.

THE COURT: In Jackson?

JUROR: Yes.

THE COURT: Okay. How often—wait a second—how often do you see him?

JUROR: Two or three times a week.

\* \* \* \* \* \*

THE COURT: Who else....

JUROR: I have a cousin who is a retired Sterling Heights Detective.

THE COURT: How often do you see him?

JUROR: I haven't seen him in about two years. And also, I have a friend who is a State Trooper who I just seen a month about [sic] for the first time in about four years.

THE COURT: Okay. Yes, sir.

JUROR: My father was related with the military police.

THE COURT: Yes, sir.

JUROR: I have several friends who are police officers and neighbors.

THE COURT: Okay. Who else?

JUROR: My step-father is a retired Detroit Police Officer, my brother-in-law is a retired Detroit Detective Sergeant, and my nephew is a Wayne County Sheriff.

THE COURT: Okay. Who else?

JUROR: We just have a couple in our church, I see them in my small group meeting on Wednesday nights, and I see him.

\* \* \* \* \* \*

THE COURT: Now anything in any of the relationships that any of you have described that you think will affect your ability to be fair and impartial in this case? ...

[No response from jurors.]

During this questioning, Phillpotts did not speak up. After completing *voir dire*, the court called counsel to the bench for a sidebar, where Greenman asked the judge to question further two prospective jurors: "the person in law enforcement" (Dunn) and the

---

1. Zerka had been within earshot and attested that he heard Phillpotts admit that "he knew a lot of police officers" and that "he didn't tell the truth."

"man [who] said he was a para-legal" (Pemberton). Other than those prospective jurors, Greenman passed on challenges for cause.

The court questioned Dunn[2] and Pemberton in more detail. Attorneys for both parties passed for cause, and then exercised their peremptory challenges. Greenman used his first peremptory to excuse Dunn; the record does not reflect whether he used other peremptories to excuse any other jurors who admitted having relationships with police officers. Despite having friends in law enforcement, Phillpotts remained silent

2. THE COURT: Mr. Dunn, you said you had some experience in law enforcement?
[DUNN]: Yes, in college, when I went to school I majored in law enforcement.
THE COURT: But you never followed it up?
[DUNN]: No, I haven't.
THE COURT: You said you have a number of persons that are friends that are police officers?
[DUNN]: Right.
THE COURT: Is that because of your college training, or just—
[DUNN]: Well, I have had three neighbors that are police officers.
THE COURT: Where do you live?
[DUNN]: Grosse Pointe Woods.
THE COURT: Thank you. Does the panel pass for cause?
MR. GREENMAN: May I ask for one more concerning Mr. Dunn's social activities with neighbors, if at all.
THE COURT: Well, okay. Tell us something more about that so we know.
[DUNN]: We have got a pretty close neighborhood. Two of my neighbors are Grosse Pointe Woods police officers, and one of them is a Grosse Pointe Farms police officer. I also have a couple of old friends that I have gone to school with and have grown up with that are police officers. I don't see them too often. But the neighbors, especially during the summer when things are nice, we see a lot of each other.
THE COURT: Do you have any concern that they are going to be looking over your shoulder when you're in the jury room?
[DUNN]: No.

3. Greenman's affidavit, and consequently petitioner's brief, misstates that "Philpots [sic] admitted to him, in the presence of Juror Pemberton, that he *gave false answers* on voir dire concerning his relationship with friends and relatives who were police officers." In fact, Phillpotts had *failed to mention* relationships with law enforcement officers.

4. [GREENMAN]: Do you recall Mr. Phillpotts indicating that you and he were in a prior *voir*

throughout the *voir dire*[3] and when jurors were given an opportunity to speak privately with the judge.

Armed with this new information, Zerka moved for a new trial on the basis of juror impropriety, or in the alternative, for a hearing on bias. The court conducted an evidentiary hearing on June 22. At the hearing, Pemberton testified that he remembered Phillpotts saying that he did not tell the truth at *voir dire* in order to get on the jury.[4]

Phillpotts testified[5] and acknowledged that he did not respond truthfully during *voir dire*. He explained that he had been called

*dire* selection within this court building prior to our trial?
[PEMBERTON]: Yes.
[GREENMAN]: Was that true?
[PEMBERTON]: Yes, it was, sir.
[GREENMAN]: Do you recall Mr. Phillpotts saying, in my presence and your presence, that he learned from that prior experience that you had to answer the questions in a certain way in order to stay on the jury?
[PEMBERTON]: I remember him making a statement, but I don't think it was, I don't recall it being about the previous jury that we sat on.
[GREENMAN]: Fine. Do you recall Mr. Phillpotts saying in our presence that he had friends or relatives who were police officers, and he did not tell the truth in our jury selection because he wanted to get on the jury?
[PEMBERTON]: Yes, sir.

5. [GREENMAN]: Did you also indicate to me that you had learned from that experience, which it was just a few days before, that you had learned that you could get on a jury if you answered certain questions a certain way; do you recall telling me that? Or, it depended how you answered the questions whether or not you would remain on the jury?
[PHILLPOTTS]: Yes.

       \*     \*     \*     \*     \*     \*

[GREENMAN]: Do you recall admitting to me that you had friends and relatives who were police officers, and you did not raise your hand and tell the Court that affirmatively because you wanted to be on the jury?
[PHILLPOTTS]: Yes.
[GREENMAN]: You did that, didn't you?
THE COURT: Wait a minute. Had friends and—
[GREENMAN]: Relatives.
[PHILLPOTTS]: No relatives, just neighbors.

     \*     \*     \*     \*     \*     \*

[GREENMAN]: You admitted to me you did not tell the truth, and the Court the truth

for jury duty before and feared that if he answered truthfully, he would not be chosen to serve. He added that he was embarrassed to speak up because he stuttered, and that he felt he could overlook his friendships because they would not affect his objectivity.

After reviewing the evidence, the court concluded that Phillpotts deliberately and intentionally concealed his relationships with police officers for two reasons: to get on the jury, and to a lesser extent, because he was embarrassed about speaking in front of other jurors. The court then applied *McDonough Power Equip., Inc. v. Greenwood,* 464 U.S. 548, 104 S.Ct. 845, 78 L.Ed.2d 663 (1984), in which the Supreme Court held that a new trial is warranted only where a truthful answer would have provided grounds for a challenge for cause. Finding that "at best, a true answer would have allowed plaintiff's counsel a more discerning basis for exercising preemptory [sic] challenges ... [but] would not have provided grounds for a challenge for cause and plaintiff has conceded this point," the court denied the motion for a new trial. Zerka timely appeals.

## II

"[A] district court's determination on a motion for either a new trial or relief from

regarding your relationship with police officers because you wanted to be on the jury, and you then indicated to me further that you could set that relationship aside and determine the facts; isn't that true?
[PHILLPOTTS]: Yes.

Phillpotts seemed to change his account upon direct examination by defense counsel, Frederick Schmoll:

[SCHMOLL]: As of April of this year, do you have any present or prior relationships with any law enforcement agency, and that would include either yourself, your spouses, or members of your family?
[PHILLPOTTS]: No, sir.
[SCHMOLL]: Pardon me?
[PHILLPOTTS]: No, sir.

\* \* \* \* \* \*

[SCHMOLL]: Anything in any of the relationships that you have that you think you [sic] affect your ability to be fair and impartial?
[PHILLPOTTS]: No, it would not be any problem.

On redirect examination, Phillpotts explained his silence at *voir dire:*

[GREENMAN]: [W]hen there were eighteen people sitting in these chairs ... and Judge Cohn was asking all the questions about rela-

judgment because a juror failed to fully disclose information during *voir dire* is reversible only for either an abuse of discretion ... or a clear error of law in the exercise of this discretion." *McCoy v. Goldston,* 652 F.2d 654, 657 (6th Cir.1981) (citations omitted); *see United States v. Patrick,* 965 F.2d 1390, 1399 (6th Cir.), *cert. denied,* —— U.S. ——, 113 S.Ct. 376, 121 L.Ed.2d 287 (1992).

## III

Zerka argues that he was denied a fair trial because Phillpotts's failure to discuss his relationships with police officers prevented Zerka from intelligently exercising his peremptory challenges. He relies upon *McCoy v. Goldston,* which held that a court shall presume bias and order a new trial where a juror deliberately conceals information or gives a purposefully incorrect response. 652 F.2d at 658–59. Zerka argues that *McDonough* does not apply here because that case involved a juror's "mistaken but honest" response to a *voir dire* question, unlike Phillpotts's deliberate concealment.

In *McDonough,* the Supreme Court held that a litigant is "not entitled to a new trial

tionships with police officers, and everybody was raising their hands ... you didn't say anything, did you?
[PHILLPOTTS]: Should I say yes, no, or can I talk?
[GREENMAN]: You didn't say anything, did you?
[PHILLPOTTS]: No.
[GREENMAN]: And you had a funny feeling in your stomach that you were concealing information, didn't you?
[PHILLPOTTS]: I didn't want to stutter, which I did that day.
THE COURT: I'm sorry.
[GREENMAN]: Go ahead, sir.
[PHILLPOTTS]: I'm a stutter [sic]. I don't usually like to do what I did that day. It was very embarrassing, so I didn't, you know, state everything.
[GREENMAN]: But you knew you were concealing information that might have been important to me and other members of the Court; isn't that true?
[PHILLPOTTS]: I really don't.
[GREENMAN]: Not really, because you believed you could overlook your relationships; isn't that true?
[PHILLPOTTS]: With friends, yes.

unless the juror's failure to disclose denied [a party] their right to an impartial jury." 464 U.S. at 549, 104 S.Ct. at 846–47. The two-part test announced in *McDonough* governs cases of intentional concealment, even though the Court believed that the juror in that particular case answered honestly: [6]

A trial represents an important investment of private and social resources, and *it ill serves the important end of finality to wipe the slate clean to recreate the peremptory challenge process because counsel lacked an item of information which objectively he should have obtained* from a juror on *voir dire* examination.... We hold that to obtain a new trial in such a situation, a party must *first demonstrate that a juror failed to answer honestly* a material question on *voir dire, and then further show that a correct response would have provided a valid basis for a challenge for cause.*

464 U.S. at 555–56, 104 S.Ct. at 850 (emphasis added). As a result, some of the confusion surrounding *McDonough* is due to the origination of a rule applicable to deliberate concealment from a case involving a juror's innocent non-disclosure. Nonetheless, other courts apply the *McDonough* test in cases of deliberate concealment or false answers. *See United States v. Langford,* 990 F.2d 65, 68 (2d Cir.1993) ("We read this multi-part test as governing not only inadvertent nondisclosures but also nondisclosures or misstatements that were deliberate...."). *See also Artis v. Hitachi Zosen Clearing, Inc.,* 967 F.2d 1132, 1141–42 (7th Cir.1992); *Burton v. Johnson,* 948 F.2d 1150, 1158 (10th Cir.1991), *cert. denied,* ——— U.S. ———, 113 S.Ct. 1879, 123 L.Ed.2d 497 (1993); *United States v. Scott,* 854 F.2d 697 (5th Cir.1988); *United States v. St. Clair,* 855 F.2d 518, 522–23 (8th Cir.1988); *United States v. Perkins,* 748 F.2d 1519, 1531–33 (11th Cir.1984).

The *McDonough* standard is more concerned with actual prejudice than with a juror's subjective mental state, although the latter can be evidence of the former. Thus, a juror's motive for concealing information is relevant, but not dispositive. 464 U.S. at 556, 104 S.Ct. at 850 ("The motives for concealing information may vary, but only those reasons that affect a juror's impartiality can truly be said to affect the fairness of a trial.") Rather, the Court's two-part test requires a party to offer more than the mere possibility that, given the chance, counsel might have removed a prospective juror.

The nature of the undisclosed information is more probative than the juror's particular state of mind; a well-intentioned juror omitting a material fact can do more damage than one who deliberately conceals an inconsequential fact. *See Scott,* 854 F.2d at 699 ("A finding of 'sincerity' is not the same as a finding that the juror was unbiased. A juror may not conceal material facts disqualifying him simply because he sincerely believes he can be fair in spite of them.")

For example, in *United States v. Langford,* a juror failed to admit three arrests fifteen years earlier for prostitution. 990 F.2d at 66–67. The juror worked as a mental health assistant, had just taken the board examination to be a nurse, had a six-year-old daughter, and taught Sunday School. *Id.* at 67. The district court found that she had deliberately failed to speak up, but out of embarrassment. The court also recognized that the juror had no interest in being on that particular jury and determined that the defendant did not suffer prejudice. Accordingly, the district court applied *McDonough* and did not order a new trial; the Second Circuit affirmed on the same basis. *Id.* at 67–70.

The Supreme Court in *McDonough* explicitly rejected the argument that a plaintiff who is prevented from intelligently utilizing his peremptory challenges is entitled to a new trial, and it counseled against exactly this sort of endless second-guessing:

Whatever the merits of the Court of Appeals' standard in a world which would redo and reconstruct what had gone before upon any evidence of abstract imperfection, we think it contrary to the practical

---

6. "Juror Payton *apparently believed* that his son's broken leg sustained as a result of an exploding tire was not such an injury.... To invalidate the result of a 3–week trial because of a juror's *mistaken, though honest,* response to a question...." *McDonough,* 464 U.S. at 555, 104 S.Ct. at 849 (emphasis added).

necessities of judicial management reflected in Rule 61 and [28 U.S.C.] § 2111. 464 U.S. at 555–56, 104 S.Ct. at 850.

Thus, the Court has previously addressed and rejected the contention, as stated by Zerka in his brief, that "dishonesty in order to remain on the jury is in itself is enough to show ... bias." *McDonough* negated the Sixth Circuit's prior rule that "a district judge shall presume bias, and grant a new trial, when a juror deliberately conceals information or gave a purposefully incorrect answer." *Urseth v. City of Dayton*, 680 F.Supp. 1084, 1090–91 (S.D. Ohio 1987), *quoting McCoy*, 652 F.2d at 659. Contrary to Zerka's assertion, *McCoy* does not remain good law in situations of deliberate concealment; rather, the opposite is true. "If a juror is found to have deliberately concealed material information, bias *may* be inferred. If, however, information is *not* concealed deliberately, the movant must show *actual bias*." *United States v. Patrick*, 965 F.2d 1390, 1399 (6th Cir.1992) (emphasis added), *citing Cunningham v. Sears, Roebuck & Co.*, 854 F.2d 914, 916 (6th Cir.1988).[7]

In this case, the district court properly held an evidentiary hearing and applied the two-part *McDonough* analysis. First, the court questioned Phillpotts and concluded that he had indeed deliberately concealed information. Second, the court then found that an honest answer by Phillpotts would not have been sufficient to justify a challenge for cause. Zerka agrees with both points. First, Zerka repeatedly states that Phillpotts deliberately lied to get on the jury, and argues that this requires the invocation of *McCoy* rather than *McDonough*. Second, Zerka argued to the district court in his brief for a new trial:

> If Juror Philpots [sic] had truthfully responded "Yes" to this question, *the answer in itself probably would not be the basis of a challenge for cause*. However, *it certainly would be useful and pertinent information to be used by Plaintiff's attorney in exercising his peremptory challenges*.

JA at 54 (emphasis added). Further, Zerka entitles his statement of the argument in his brief before this court:

> PLAINTIFF IS ENTITLED TO A NEW TRIAL WHERE A JUROR DELIBERATELY GAVE FALSE RESPONSES DURING VOIR DIRE PREVENTING PLAINTIFF FROM INTELLIGENTLY UTILIZING HIS PEREMPTORY CHALLENGES AND THEREBY DENYING PLAINTIFF OF HIS CONSTITUTIONAL RIGHT TO A FAIR TRIAL BY AN IMPARTIAL JURY.

Hence, the district court correctly concluded that "[a]t best, a true answer would have allowed plaintiff's counsel a more discerning basis for exercising preemptory [sic] challenges," and that a new trial was thus unwar-

---

7. *McDonough* does not entirely foreclose a party from seeking a new trial on the basis of a prospective juror's honest, though mistaken, response. *See Amirault v. Fair*, 968 F.2d 1404, 1405–6 (1st Cir.) ("[W]e read [*McDonough*] to require a further determination on the question of juror bias even where a juror is found to have been honest ...."), *cert. denied*, — U.S. —, 113 S.Ct. 602, 121 L.Ed.2d 538 (1992); *Cannon v. Lockhart*, 850 F.2d 437, 440 (8th Cir.1988) ("[A] juror's dishonesty is not a predicate to obtaining a new trial."). In the absence of intentional concealment, only extreme circumstances justify a new trial. As Justice Blackmun noted in his concurring opinion in *McDonough*, joined by Justices Stevens and O'Connor:

> [I]n most cases, the honesty or dishonesty of a juror's response is the best initial indicator of whether the juror in fact was impartial.... I understand the Court's holding not to foreclose the normal avenue of relief available to a party.... [R]egardless of whether a juror's answer is honest or dishonest, it remains within a

trial court's option, in determining whether a jury was biased, to order a post-trial hearing at which the movant has the opportunity to demonstrate actual bias or, in exceptional circumstances, that the facts are such that bias is to be inferred.

*Id.* 464 U.S. at 556–57, 104 S.Ct. at 850. Justice Brennan, joined by Justice Marshall, raised a similar point in their separate concurrence:

> I therefore cannot agree with the Court ... that a new trial is not warranted whenever a prospective juror provides an honest answer.... One can easily imagine cases in which a prospective juror provides what he subjectively believes to be an honest answer, yet that same answer is objectively incorrect and therefore suggests that the individual would be a biased juror in the particular case.

*Id.* at 558–59, 104 S.Ct. at 851 (citations omitted). In such a case, *McDonough* would not apply, but rather the pre-existing rule requiring proof of actual juror bias.

ranted. Since "[t]here is nothing in the Constitution of the United States which requires the Congress to grant peremptory challenges," *Stilson v. United States*, 250 U.S. 583, 586, 40 S.Ct. 28, 30, 63 L.Ed. 1154 (1919), a circumstance that impairs their exercise is not *per se* unconstitutional. The pertinent issue is whether a party received a fair trial by an impartial jury, keeping in mind that "[a litigant] is entitled to a fair trial but not a perfect one, for there are no perfect trials." *McDonough*, 464 U.S. at 553, 104 S.Ct. at 848 (citations and internal quotes omitted).

This case epitomizes the wisdom of the *McDonough* standard. Despite admissions by several jurors that they had various relationships with law enforcement officers, plaintiff's counsel never challenged any of them for cause, although he used a peremptory challenge to remove a juror who had three neighbors who are police officers. Similarly, Phillpotts failed to disclose that he had friends who are law enforcement officers, but this information alone surely would not merit his removal for cause. Although a court could speculate that Phillpotts would have been removed peremptorily, without evidence that Phillpotts actually favored the defendant, it is equally uncertain whether his removal would have changed the trial's outcome. Instead, Zerka seeks to create a *per se* rule to invalidate the result an almost five-day trial on the basis of "abstract imperfection." The Supreme Court foreclosed such hypothetical guessing games in *McDonough*.[8]

The circumstances of this case are similar to those in *Urseth v. City of Dayton*, where a district court also rejected a motion for a new trial based on a juror's allegedly false statements at *voir dire*. 680 F.Supp. at 1090–94. In *Urseth*, also a § 1983 suit alleging excessive force by a police officer, an unsuccessful defendant claimed that a juror, Mr. Gunner, had not admitted prior prejudicial encounters with police. After an *in camera* hearing, the court found that Gunner had not failed to answer honestly any material question at *voir dire*, although "he may have understood several of those questions differently than the court and counsel intended." *Id.* at 1093. Nevertheless, the court assumed that Gunner had lied and evaluated his answers under the second part of *McDonough*, finding "that there was no substantial possibility that Gunner was either consciously or unconsciously biased against the Defendant." *Urseth*, 680 F.Supp. at 1093. The court held there was no basis for a challenge for cause, and thus no infringement of the defendant's right to a fair trial. *Id.* at 1093–94.

Likewise, the district court below fulfilled its duties in investigating possible juror bias. The court conducted a post-trial hearing, questioned witnesses, and allowed the parties to brief the issues. In light of the district court's eminently reasonable conclusions and Zerka's concessions, we find no abuse of discretion or error of law. Therefore, Zerka received a fair trial. We AFFIRM the district court.

---

8. Plaintiff's counsel virtually admitted the conjectural nature of his argument at the evidentiary hearing:

THE COURT: Mr. Greenman, you understand that I'm making a finding now that the correct answer wouldn't have been sufficient by itself to allow you to challenge for cause.

[GREENMAN]: Yes, I understand that.

THE COURT: But it prevented you from a follow-up questions [sic], any follow-up questions, and there's nothing to indicate, though, that any follow-up questions would have given rise to a challenge for cause.

[GREENMAN]: I think we get into speculative evidence there.

THE COURT: I understand that. But it certainly prevented you from—

[GREENMAN]: To the extent that others openly discussed their relationships, but ... there were no challenges for cause [for those who spoke up], I have to concede that.