**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Anthony RODGERS, Defendant–
Appellant.**

No. 02–3975.

United States Court of Appeals,
Sixth Circuit.

Jan. 6, 2004.

**484**

Thomas A. Karol, Asst. U.S. Attorney, Toledo, OH, for Plaintiff-Appellee.

Jeffrey M. Gamso, Gamso, Helmick & Hoolahan, Toledo, OH, for Defendant-Appellant.

Before KRUPANSKY, MOORE, and ROGERS, Circuit Judges.

## OPINION

MOORE, Circuit Judge.

Defendant–Appellant, Anthony Rodgers ("Rodgers"), appeals his conviction by jury on charges of armed bank robbery, in violation of 18 U.S.C. § 2113, and use of a firearm during a violent felony, in violation of 18 U.S.C. § 924(c). Rodgers raises two issues on appeal. First, he asserts that the district court abused its discretion in denying his motion for a mistrial after at least one juror lied when questioned by the court regarding jury members having seen Rodgers in custody outside of the courtroom. Second, he asserts that the district court abdicated its obligations under *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993). by admitting expert testimony without a proper foundation regarding its relevance and reliability. For the following reasons, we **AFFIRM** Rodgers's conviction.

### I.

On July 31, 2001, three masked men robbed the Fifth Third Bank ("bank"), in Maumee, Ohio. During the robbery, one of the robbers fired a single gunshot. Rodgers was arrested, charged, tried to a jury, and convicted of armed bank robbery and using a firearm in relation to the robbery. On August 16, 2002, the district court entered its judgment of sentence, and on August 21, 2002, Rodgers timely appealed the district court's judgment.

### II.

A one and one-half-day trial was held on February 19, 2002 and February 20, 2002. On the morning of the second day of trial, Juror Peadon and one other juror saw Rodgers wearing his prison jumpsuit and in the custody of U.S. marshals. After this incident was reported to the district court, the court questioned Juror Peadon. During questioning, Juror Peadon stated that he was on the elevator with another juror, and when the elevator door opened, he saw Rodgers with what looked like officers. He also stated during questioning that he told three to five other jurors what he saw while on the elevator, in response to a juror's comment that she was not allowed to use the elevator that morning. The court asked Juror Peadon whether he understood that "the defendant is presumed innocent until the government proves him guilty beyond a reasonable doubt," to which Juror Peadon answered yes. Joint Appendix ("J.A.") at 83. After the court finished questioning Juror Peadon, Rodgers moved for a mistrial.

The district judge overruled Rodgers's motion but nevertheless decided to question each juror individually to ask what he had seen or heard about the defendant and whether he could decide the case only on the evidence presented at trial. The court asked each juror whether he had seen or heard anything that morning in regard to Rodgers, and whether, if he were to have seen or heard something about Rodgers, that would affect his verdict. Each juror responded that he had not seen anything, and that if he had, it would not affect his verdict. After the court questioned each juror, Rodgers renewed his motion for a mistrial, and the court again overruled it. The court also made a finding that "there's no reasonable basis for concluding that this jury will be in any way prejudiced, either the two individual jurors or the other juror or the jury as a whole would be in any way prejudiced by the *brief and really rather inconclusive observation of the defendant,*" J.A. at 111 (emphasis added). The jury then reconvened, and the court gave a curative instruction.

On appeal, Rodgers argues that the district court abused its discretion by denying his motion for a mistrial after Juror Peadon saw the defendant in custody outside of the courtroom. Rodgers contends that the district court should have presumed that this incident prejudiced Rodgers's right to a fair trial because at least one juror lied when questioned by the district court, in that either Juror Peadon lied about telling three to five of his fellow jurors that he saw the defendant in custody, or his fellow jurors lied about what Peadon told them.

This court reviews "for abuse of discretion the district court's denial of a motion for mistrial." *United States v. Yang,* 281 F.3d 534, 549 (6th Cir.2002), *cert. denied,* 537 U.S. 1170, 123 S.Ct. 1015, 154 L.Ed.2d 912 (2003). Deference is giv-

en to the district court because "[t]he trial judge is in the best position to determine the nature of the alleged jury misconduct ... [and] is also in the best position to determine appropriate remedies for any demonstrated misconduct." *United States v. Copeland,* 51 F.3d 611, 613 (6th Cir.). *cert. denied,* 516 U.S. 874, 116 S.Ct. 199, 133 L.Ed.2d 133 (1995).

That Juror Peadon saw Rodgers outside of the courtroom wearing his prison jumpsuit and in the custody of officers is not enough to raise a presumption of prejudice, a point conceded by Rodgers. We have held that "[g]enerally, a criminal defendant 'should not be compelled to go to trial in prison or jail clothing because of the possible impairment' of the presumption of innocence guaranteed as part of a defendant's due process right to a fair trial." *United States v. Waldon,* 206 F.3d 597, 607 (6th Cir.), *cert. denied,* 531 U.S. 881, 121 S.Ct. 193, 148 L.Ed.2d 134 (2000) (quoting *Estelle v. Williams,* 425 U.S. 501, 504, 96 S.Ct. 1691, 48 L.Ed.2d 126 (1976)). In analyzing defendants' "prison garb" claims, however, we have distinguished between "a defendant who is shackled while in the courtroom" and "a defendant who has been observed in shackles for a brief period elsewhere in the courthouse." *Id.* When defendants were shackled during trial, we presume prejudice, whereas defendants who were observed in shackles elsewhere in the courthouse "are required to show actual prejudice." *Id.* Because Juror Peadon observed Rodgers in custody outside of the courtroom, there is no presumption of prejudice. Additionally, that Juror Peadon relayed his observation of the defendant in custody to three to five of his fellow jurors does not give rise to a presumption of prejudice. *See id.* at 607–08.

We have articulated two ways that a party may obtain a new trial based upon a

juror's concealment of information on voir dire. *United States v. Solorio*, 337 F.3d 580, 595 (6th Cir.2003). "First, if a juror deliberately conceals material information on voir dire, the party seeking a new trial can obtain relief by showing that the juror could have been challenged for cause.... In such a case, 'bias may [but need not] be inferred.'" *Id.* (quoting *Zerka v. Green*, 49 F.3d 1181, 1185–86 (6th Cir.1995)). Second, "[i]t is possible, however, that a juror could have concealed information in a non-deliberate fashion, through an 'honest, though mistaken, response.' If information is not deliberately concealed, bias may not be inferred. Instead, 'the movant must show actual bias.'" *Id.* (citations omitted). This case does not involve allegations that jurors lied on voir dire, but rather it involves allegations that jurors lied during questioning conducted mid-trial; however, we will assume for purposes of this decision that the *Solorio* test applies.

In this case, it is likely that Juror Peadon's fellow jurors concealed the alleged fact that Juror Peadon told them that he had seen the defendant that morning through an "honest, though mistaken, response." During its questioning of the jurors, the district court asked the jurors the following rather vague question: "Have you seen or heard anything this morning in regards to the defendant, anything about the defendant at all?" *See, e.g.,* J.A. at 97. This question was phrased vaguely in order to avoid exacerbating the problem of jurors discovering that Rodgers was seen in jail garb and in the custody of officers. Given that Juror Peadon's comment to the fellow jurors was made in the context of a discussion about why the jurors were required to use the stairs that morning, it is quite possible that the jurors did not think that the district court's question sought information regarding this conversation. Juror Peadon's fellow jurors

likely failed to reveal relevant information through an "honest, though mistaken, response"; therefore, there is no inference of bias and Rodgers must show actual prejudice. *See Solorio*, 337 F.3d at 595. The district court explicitly found that there was no evidence of actual prejudice, and on appeal, Rodgers does not argue that there is evidence of actual prejudice. Because there is no evidence that any juror lied intentionally and no evidence of actual prejudice, the district court did not abuse its discretion in refusing to grant a mistrial on this basis.

Finally, during its questioning of the jurors, the district court reminded each juror individually to decide the case solely on the evidence presented at trial and then gave a second curative instruction to the entire jury as a group. We presume that jurors follow curative instructions. *United States v. Wiedyk*, 71 F.3d 602, 608 (6th Cir.1995). Because there is no evidence of actual prejudice, there are no grounds upon which to presume prejudice, and the district court gave a curative instruction, we conclude that the district court did not abuse its discretion in denying Rodgers's motion for a mistrial.

### III.

During trial, the government provided expert testimony from criminalist Franks regarding ballistics and footprint evidence. Criminalist Franks first testified in detail about his extensive education and work experience in the field of criminalistics. After recounting his credentials, criminalist Franks testified that he had concluded that the .380–shell casing recovered from the bank was fired from the Bryco semi-automatic pistol that was recovered from the bag found near where the defendants were apprehended. He further testified that a latent footprint recovered from the

counter of the bank came from a shoe that Rodgers was wearing when he was arrested.

◼ On appeal, Rodgers argues that the district court abused its discretion in admitting the expert testimony of criminalist Franks about the ballistics and footprint evidence without a proper foundation regarding its relevance and reliability.[1]

Rodgers failed to object to the expert testimony of criminalist Franks at trial. When a defendant fails to object to expert testimony at trial, this court reviews for plain error the district court's admission of that testimony. *United States v. Anderson*, 89 F.3d 1306, 1310 n. 2, 1312 (6th Cir.1996), *cert. denied*, 519 U.S. 1100, 117 S.Ct. 786, 136 L.Ed.2d 728 (1997). Additionally, when the district court allows an expert witness to testify without first having qualified the witness as an expert, this court may determine on appeal whether the witness qualified as an expert. *Id.* at 1312.

The Supreme Court has held that Federal Rule of Evidence 702 requires district courts to ascertain whether a party proffering expert testimony has laid an adequate foundation demonstrating that the testimony is relevant and reliable. *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 594–97, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993); *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 141, 119 S.Ct. 1167, 143 L.Ed.2d 238 (1999).

As to the footprint evidence, criminalist Franks testified that he concluded that a latent footprint found on a counter in the bank was made by a shoe worn by Rodgers. Criminalist Franks provided significant evidence regarding the reliability of his conclusions about the footprint evi-

dence. First, criminalist Franks testified generally about his training and experience in processing physical evidence and specifically about his training and experience in making footwear comparisons. Second, criminalist Franks testified generally about how footwear comparisons are performed and specifically about how he performed the footwear comparison in this case. Third, criminalist Franks testified that footwear comparisons are a generally accepted forensic technique. All of the foregoing testimony provided information from which the jury could determine how much weight to give the footprint evidence.

Although the district court may not have made an explicit finding that criminalist Franks's testimony regarding the footwear comparison was relevant and reliable, we may make that determination for the first time on appeal. Because criminalist Franks testified about his qualifications and methodology, we conclude that the district court did not commit plain error in admitting criminalist Franks's testimony regarding the footprint evidence.

As to the ballistics evidence, criminalist Franks testified that he concluded that the .380–shell casing recovered from the bank was fired from the Bryco semi-automatic pistol recovered from the bag found near where the defendants were apprehended. The only evidence provided by the government to support the relevance and reliability of this conclusion was criminalist Franks's testimony that he reached this conclusion by performing a "firing pin comparison." The government did not provide a substantial foundation regarding the relevance and reliability of criminalist Franks's testimony about the ballistics comparison. Criminalist Franks, however, testified generally about his training and

---

1. On appeal, Rodgers does not contest the relevance of criminalist Franks's testimony   about the footprint or ballistics evidence.

experience in processing physical evidence and testified that he performed a "firing pin comparison."

Although the government did not lay a substantial foundation regarding the relevance and reliability of criminalist Franks's testimony about the ballistics comparison, we nonetheless conclude that the district court did not commit plain error in admitting that testimony. Through criminalist Franks's testimony, the government provided evidence regarding Franks's qualifications, and identified the test that he performed to reach his conclusion. Rodgers had ample opportunity to discredit criminalist Franks's conclusion on cross-examination and through the presentation of contrary evidence.

Additionally, even if the ballistics evidence is disregarded, the evidence against Rodgers is overwhelming. Various witnesses saw the robbers rob the bank and viewed much of their attempt to flee the scene; the police recovered a black bag containing guns, ski masks, latex gloves, and money—all of which witnesses identified at trial—near where the robbers were apprehended; the police recovered two packs of bait bills from the robbers; and criminalist Franks testified that a latent shoe print found on the bank counter came from a shoe worn by Rodgers. Therefore, we hold that the district court did not commit plain error in admitting criminalist Franks's testimony regarding the ballistics evidence.

## IV.

For the foregoing reasons, we reject Rodgers's assignments of error and **AFFIRM** the district court's judgment of conviction.