**Bobby BAKER, Petitioner–Appellant,**

v.

**Larry CRAVEN, Jr., warden,
Respondent–Appellee.**

**No. 02–5252.**

United States Court of Appeals,
Sixth Circuit.

Oct. 28, 2003.

Elizabeth T. Ryan, Asst. Atty. General, Office of the Attorney General, Nashville, TN, for Respondent–Appellee.

Bobby Baker, pro se, Nashville, TN, for Petitioner–Appellant.

Before SUHRHEINRICH, COLE, and ROGERS, Circuit Judges.

ROGERS, Circuit Judge.

Petitioner Bobby Baker, a prisoner of the State of Tennessee, appeals the dismissal of his petition for a writ of habeas corpus. Baker argues that he is entitled to a new trial because, during the *voir dire*, a potential juror failed to reveal that she knew Baker and that she was aware of his criminal convictions. Baker, however, has not established that, if the juror had revealed this information, he could have challenged her for cause, as required by *McDonough Power Equip., Inc. v. Greenwood*, 464 U.S. 548, 104 S.Ct. 845, 78 L.Ed.2d 663 (1984). We therefore AFFIRM the judgment of the district court.

## I.  BACKGROUND

### 1.  Procedural Background

On March 17, 1995, a Tennessee jury convicted Baker of aggravated burglary and aggravated rape. On July 10, 1995, Baker filed an amended motion for a new trial in the trial court, arguing, *inter alia*, that a juror's failure to disclose her acquaintance with Baker and her knowledge of his prior criminal convictions during *voir dire* had denied Baker "a fair and impartial panel of jurors." The trial court heard testimony from the juror in question during its hearing on Baker's motion. However, it denied Baker's motion without discussing the issue of juror bias. Baker appealed to the Tennessee Court of Criminal Appeals, arguing again that the juror's non-disclosure deprived him of "a trial by fair and impartial jurors." On January 27,

1997, the appellate court affirmed the trial court's judgment. On September 8, 1997, the Tennessee Supreme Court denied Baker's petition for permission to appeal.

On June 15, 1999, Baker filed a petition for a writ of habeas corpus in the United States District Court for the Western District of Tennessee, asserting three grounds for relief. After preliminary review, the court dismissed two of Baker's claims (specifically, ineffective assistance of counsel and illegal search and seizure). But it ordered the respondent to file a response to Baker's claim of juror bias. On January 29, 2002, the court granted the respondent's motion for summary judgment, but it granted Baker a partial certificate of appealability covering the juror bias claim. On February 15, 2002, Baker filed a timely notice of appeal. On July 17, 2002, this Court denied Baker's request for a certificate of appealability on the issues not certified by the district court.

## 2. *Voir Dire*

During the *voir dire,* counsel repeatedly questioned the veniremen about their familiarity with Baker. At the outset, the court advised that the attorneys might ask "some questions to find out if you know anyone involved in the case." J.A. at 184. To start his questioning, the prosecutor explained,

What the State wants is 12 people in the jury box, hopefully, that don't know the defendant, don't know the victim, hadn't heard anything about the crime, hadn't got anything in their past that will make them form an opinion one way or another about the guilt or innocence of the defendant....

J.A. at 185.

Soon thereafter, the prosecutor inquired whether any of the veniremen had any "past experiences" that would affect their impartiality. J.A. at 192. In response, two veniremen revealed that they knew Baker personally. The first stated that Baker was married to her first cousin. She claimed that, although she could base her verdict on the evidence, "[i]t would be difficult" and she "wouldn't be comfortable." J.A. at 192–94. The second reported that Baker was a friend and a member of her church, and she professed an inability to serve as an impartial juror. J.A. at 194–95. Both veniremen were excused for cause.

After further, unrelated questioning, the prosecutor reiterated the importance of disclosing information about any connection with Baker. Specifically, he instructed,

Now its been volunteered by a couple of people and I appreciate it because, you know, I can't ask every question, and sometimes I've had people on juries that I found out later said, "Well, you should have asked me if, you know, I play pinochle with the defendant's mama every Wednesday." Well, you know, I can't ask do you play pinochle with the defendant's mama every Wednesday. There'll be some questions I can't ask you. So you know better than I if there's some information that you need to volunteer. Is there anybody here besides the two people previously ... who indicated they knew the defendant or his family, is there anybody else that knows the defendant there, Bobby Baker, or his family?

J.A. at 198.

In response, a venireman revealed that he had known Baker "half his life" and that Baker "used to hang around with [his] brothers." However, he stated that this connection would not compromise his impartiality, and he was not excused for cause. J.A. at 198–99. Later, Baker used

a peremptory challenge to strike this venireman.

One last time, the prosecutor questioned the veniremen about any knowledge of Baker. He queried,

Okay. Is there anybody beside Mr. Maybin that knows the defendant? And sometimes, again, I don't ask the right question. You may be best friends with his brother or you might know his mama real well or, as Ms. Williams said, you might go to church with his family or have some connection with the defendant or his family that would make it hard for you to judge this case fairly?

No one responded. J.A. at 200.

### 3. The Evidentiary Hearing

Baker filed an amended motion for a new trial, arguing, *inter alia*, that one of the jurors. Jacqueline Dye, had failed to reveal that she knew Baker and that she knew of his prior criminal convictions. The trial court held an evidentiary hearing on Baker's motion, during which Dye testified.

Baker's attorney questioned Dye about the *voir dire* and her knowledge of Baker. First, Dye admitted that she knew Baker prior to the trial, but she denied that she had been asked about her connection to Baker during the *voir dire.*

Q: Did you know Bobby Baker prior [to the trial]?

A: I don't know him. I know him, but I don't know him–what happened, that case and everything. I don't know what happened in that case.

Q: Do you remember the—the—what we call the voir dire when the Court—

A: You did not ask me nothing like that.

Q: —asked questions about if you— any of you jurors knew the defendant?

A: You did not ask me nothing like that.

Q: We didn't ask you whether or not that you knew the defendant?

A: No, you didn't.

J.A. at 284. Then Dye admitted that she had learned of Baker's criminal history through newspaper reports, but she denied sharing this information with her fellow jurors.

Q: Did you know that Bobby Baker had been in trouble with the law previously?

A: It'd been a long time ago, 'cause I don't—

Q: But you did know that?

A: Yeah, but I don't know nothing like that, the case what I was on.

Q: So, you knew that he had run-ins with the law in a previous—

A: Yes, I did.

Q: —some previous way.

A: All I know in the newspaper, that's all I read, the newspaper.

Q: The paper?

A: Yeah, I don't go nowhere. I stay at home with my little girl.

Q: Okay. And when you went back to the jury room did you tell these other jurors that you knew Bobby Brown— Bobby Baker?

A: They asked me, and I told them, "Yeah, I know him a long time ago." And I don't go nowhere.

Q: Did you tell them that you had read in the paper that he'd been in previous trouble?

A: No, I don't.

J.A. at 429–30. Finally, Dye denied that her knowledge of Baker's criminal history affected her impartiality as a juror.

Q: Okay. But you had [the knowledge of Baker's criminal history] in your—in your background and knowledge?

A: Right.

Q: You think that had an influence on your determination—

A: No.

Q: —of his guilt in this case?

A: No, it don't.

Q: Do you think that it may have been that he would have had to remove his—his right to presumption of innocence because of what you already knew about him?

A: I don't know—I didn't know nothing about that rape case at all till when I got on the jury duty. That's about the only time that I know something about it.

Q: You don't think that this fact—the fact that you knew Bobby Baker and knew that he had previous trouble with the law would have had an impact on how you voted in this case?

A: No, it don't.

J.A. at 430–31.

The prosecutor briefly questioned Dye, clarifying her relationship with Baker. Specifically, he asked

Q: Ms. Dye, did Bobby Baker know you?

A: He know some of my kin folks. I know his sister. That's about it.

Q: Okay. Now, I'm not talking about whether you knew him or not, but would he have known you when he saw you, and knew your name?

A: He know my name. That about it.

J.A. at 431.

## II. ANALYSIS

This Court reviews a district court's legal conclusions in a habeas proceeding un-der the de novo standard and its factual findings under the clear error standard. *Miller v. Francis,* 269 F.3d 609, 613 (6th Cir.2001). However, when a district court bases its decision on a transcript from the petitioner's state court trial, and thus makes no credibility determination or oth-er apparent findings of fact, the Court reviews the district court's factual findings under the de novo standard. *Id.*

Baker claims that Dye's non-disclosure denied him a trial by an impartial jury. "[D]ue process alone has long demanded that, if a jury is to be provided the defen-dant, regardless of whether the Sixth Amendment requires it, the jury must stand impartial and indifferent to the ex-tent commanded by the Sixth Amend-ment." *Morgan v. Illinois,* 504 U.S. 719, 727, 112 S.Ct. 2222, 119 L.Ed.2d 492 (1992). The *voir dire* "serves to protect [this right] by exposing possible biases, both known and unknown, on the part of potential jurors." *McDonough Power Equip., Inc. v. Greenwood,* 464 U.S. 548, 554, 104 S.Ct. 845, 78 L.Ed.2d 663 (1984). Thus, "[t]he necessity of truthful answers by prospective jurors if this process is to serve its purpose is obvious." *Id.*

In *McDonough,* the Supreme Court de-vised a particularized test for determining whether a juror's non-disclosure during *voir dire* necessitates a new trial. To ob-tain a new trial, a defendant "must first demonstrate that a juror failed to answer honestly a material question on *voir dire,* and then further show that a correct re-sponse would have provided a valid basis for a challenge for cause." *Id.* at 556.[1] As

---

1. The *McDonough* test "is not the exclusive test for determining whether a new trial is warranted: a showing that a juror was actu-ally biased, regardless of whether the juror was truthful or deceitful, can also entitle a defendant to a new trial." *Jones v. Cooper,* 311 F.3d 306, 310 (4th Cir.2002) (citation omitted); *see also McMeans v. Brigano,* 228 F.3d 674, 686 (6th Cir.2000); *Gonzales v. Thomas,* 99 F.3d 978, 985–6 (10th Cir.1996). However, under the present facts, this test parallels the *McDonough* test, and, as dis-

the Court explained, "[t]he motives for concealing information may vary, but only those reasons that affect a juror's impartiality can truly be said to affect the fairness of a trial." *Id.*

During the state court proceedings, only the Tennessee Court of Criminal Appeals expressly addressed Baker's "impartial jury" claim,[2] and it appears to have applied only Tennessee law.[3] It stated that a party moving for a new trial "has the burden of showing he or she incurred actual bias or prejudice as a result of the failure to reveal the information." *State v. Baker,* 956 S.W.2d 8, 16 (Tenn.Crim.App.1997) (citations omitted). It found the record "devoid of evidence that the knowledge possessed by Ms. Dye resulted in either bias or prejudice." *Id.* It noted that Baker "candidly admits in his brief Ms. Dye did not let the information she possessed influence her decision as to [Baker's] guilt" and that she did not reveal her knowledge of Baker's prior convictions to other jurors. *Id.*

The district court applied the *McDonough* test to Baker's claim. It concluded that Baker had satisfied the first element; the court made an independent finding (based on the transcript of the evidentiary hearing) that Dye had failed to disclose her relationship with Baker's family in the face of direct questioning. However, it concluded that Baker had not satisfied the second element. It found that Baker had not rebutted the state court's finding that Dye was not biased and, hence, had not shown that he could have challenged Dye for cause.

As Baker raises his "impartial jury" claim in a habeas proceeding, he must show that the state court proceeding either (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court, or (2) resulted in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. 28 U.S.C. § 2254(d) (Supp.2003). As the state court evaluated Baker's claim only under Tennessee law—quite understandably given Baker's failure to cite federal law—no interpretation or application of federal law is presented for review. However, the state court's determination that Dye was not biased is central to the *McDonough* analysis, and we conclude that its determination was not unreasonable.

---

cussed *infra,* Baker has not demonstrated bias on Dye's part.

2. The trial court denied Baker's motion for a new trial without discussing this claim, and it does not appear that the Tennessee Supreme Court addressed the merits of Baker's claims in denying his appeal. Baker did not raise this issue in his petition for post-conviction relief. *Baker v. State,* No. W1999–01196–CCA–R3–PC, 1999 WL 1097976 (Tenn.Crim. App. Nov. 23, 1999).

3. We question whether Baker has "fully and fairly present[ed] his claim, as a matter of federal law" to the state courts, as required for habeas relief. *Stanford v. Parker,* 266 F.3d 442, 451 (6th Cir.2001). In his briefs to the trial court and the appellate court, Baker merely intoned that he was denied "a trial by fair and impartial jurors" and cited only a Tennessee Supreme Court case that arguably applied the Tennessee—not the federal—Constitution. However, the respondent has not argued that Baker has failed to exhaust his claim or that his claim is procedurally defaulted. In fact, on the United States Court of Appeals Sixth Circuit Fact Sheet for Habeas Corpus Appeals (2254) submitted with his brief, he stipulated that Baker had exhausted his claim. We assume but do not hold that Baker sufficiently presented his federal claim to the state courts, and proceed to address his claim on the merits. *See Coleman v. Mitchell,* 244 F.3d 533, 543 (6th Cir.2001).

Baker has satisfied the first element of the *McDonough* test. Counsel repeatedly asked the potential jurors whether they knew Baker or his family–clearly a material question given that a pair of potential jurors were dismissed for cause when they claimed that their respective connections to Baker precluded impartiality. Nonetheless, Dye failed to disclose that she knew Baker and his sister[4] and that she had learned of Baker's previous "run-ins with the law" through a newspaper.[5] And regardless of whether Dye's failure to respond was intentional or unintentional, the first element is satisfied. *Zerka v. Green,* 49 F.3d 1181, 1186 n. 7 (6th Cir.1995)

However, Baker has not satisfied the second element of the *McDonough* test, as he has not shown that if Baker had answered the *voir dire* questions fully and accurately he could have challenged her for cause. Baker appears to argue that Dye's knowledge of him and his criminal history—and her failure to disclose this information—compel the conclusion that Dye was biased, and that this bias would have served as the basis for a "for cause" challenge.

Certainly, if Baker could have shown bias, he would have been able to challenge Dye for cause.[6] *See Jones v. Cooper,* 311 F.3d 306, 312 (4th Cir.2002) (stating, under the Constitution, "traditionally, a challenge for cause is granted only in the case of actual or implied bias"); *Gall v. Parker,* 231 F.3d 265, 308 (6th Cir.2000), *overruled on other grounds by, Bowling v. Parker,* 344 F.3d 487, 501 n. 3 (6th Cir.2003) (explaining that, under the Sixth and Fourteenth Amendments, a juror "is not properly seated if at voir dire, he exhibits such hostility toward a defendant as to suggest a partiality that could not be laid aside" (internal quotation omitted)); *McMeans v. Brigano,* 228 F.3d 674, 686 (6th Cir.2000); *State v. Bigbee,* 885 S.W.2d 797, 805 (Tenn. 1994); TENN. R.CRIM. PROC. 24(b). However, the state court's finding that Dye was not biased is presumptively correct, and Baker has not approached his burden of rebutting this presumption by clear and convincing evidence. *See* 28 U.S.C. § 2254(e)(1) (Supp.2003); *Gall,* 231 F.3d at 308 (holding that the question of whether a trial court has seated a fair and impartial jury is a factual one) (citing *Patton v.*

4. Baker also argues that Dye did not reveal that she attended school with Baker and was teased by Baker and others. However, Baker failed to develop a factual basis for this claim during the evidentiary hearing, despite the opportunity. *See* 28 U.S.C. § 2254(e)(2) (Supp.2003).

5. Arguably, the questions posed by counsel were directed at personal knowledge of Baker and his family—not knowledge of Baker's criminal history. However, if a reasonable person is asked whether she "knew" the defendant, such a person would deem her knowledge of the defendant's criminal history responsive. Moreover, had Dye disclosed her personal knowledge of Baker, her knowledge of his criminal history would likely have been revealed under further questioning.

6. Our sister circuits have expressed uncertainty whether, to satisfy the second element of the *McDonough* test, a state prisoner seek-

ing habeas relief must show that he could have challenged the juror for cause under federal law, under state law, or under either. *Jones v. Cooper,* 311 F.3d 306, 312 (4th Cir. 2002) (stating that "[i]t is far from clear that we look to state law to determine whether a challenge for cause would have been granted" and applying both federal and state law); *Montoya v. Scott,* 65 F.3d 405, 419 n. 29 (5th Cir.1995) (applying state law but reporting that it "found no evidence that an independent federal constitutional standard would have provided a valid basis for challenging Juror X in these circumstances for cause over and above Texas law governing challenges for cause"). However, it is unnecessary to resolve this issue as bias is grounds for a "for cause" challenge under either Tennessee or federal law.

*Yount,* 467 U.S. 1025, 1038, 104 S.Ct. 2885, 81 L.Ed.2d 847 (1984)).

During the evidentiary hearing, Dye testified emphatically that her knowledge of Baker and his criminal history did not affect her decision making. Presumably, had she been questioned about this knowledge during *voir dire,* she would have denied any bias and—like her fellow juror who, having known Baker "half his life" and having "[hung] around with [his] brothers," had at least as close a relationship with Baker—would not have been dismissed for cause. *See Hughes v. United States,* 258 F.3d 453, 459 (6th Cir.2001) (stating that the Sixth Amendment standard for juror impartiality is satisfied "if the juror can lay aside his impression or opinion and render a verdict based on the evidence presented in court"); *Gall,* 231 F.3d at 308–9 (upholding state court's determination that a juror who had read of defendant's prior conviction, but who assured the court that this information would not affect his service, was impartial); Tenn. R.Crim. Proc. 24(b) (providing, in part, that if a potential juror is exposed to potentially prejudicial information "the prospective juror's acceptability shall depend on whether the testimony as to impartiality is believed"). Moreover, given the lack of a close association between Baker and Dye, bias cannot be implied in the face of Dye's assertion of impartiality.[7]

*See Jones v. Cooper,* 311 F.3d at 313 (explaining that the concept of implied bias "is limited in application to those extreme situations where the relationship between a prospective juror and some aspect of the litigation is such that it is highly unlikely that the average person could remain impartial in his deliberations under the circumstances"); *DeLisle v. Rivers,* 161 F.3d 370, 382 (6th Cir.1998) (stating that "[t]he category of cases where prejudice has been presumed in the face of juror attestation to the contrary is extremely narrow"); *Bigbee,* 885 S.W.2d at 805. In short, the record provides ample support for the state court's finding of impartiality.[8]

## III. CONCLUSION

For the reasons stated above, we **AFFIRM** the judgment of the district court.

---

7. Additionally, even if Baker were entitled to jurors without knowledge of his prior criminal convictions, Baker suffered no prejudice, as his prior convictions were introduced during trial. *See Clemmons v. Sowders,* 34 F.3d 352, 354 (6th Cir.1994) ("To obtain *habeas corpus* relief, the petitioner must establish actual prejudice.").

8. Baker's remaining complaints are without merit. Baker contends that Dye's non-disclosure deprived him of intelligent use of his peremptory challenges. However, the impairment of the exercise of peremptory challenges is not an injury of Constitutional portion. *Zerka v. Green,* 49 F.3d 1181, 1186–87 (6th Cir.1995). He also contends that Dye suffered from physical or mental infirmities that rendered her incompetent to sit on the jury. However, he did not present this claim to the state courts, and he does not attempt to excuse this failure. *See* 28 U.S.C. § 2254(b)(1) (Supp.2003). Finally, he demands an evidentiary hearing on his juror bias, but he fails to explain what facts he hopes to establish and why he did not elicit these facts during the evidentiary hearing conducted by the state trial court. *See* 28 U.S.C. § 2254(e)(2) (Supp.2003).