NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 13a0642n.06

No. 09-2632

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

|  |  |  |
|---|---|---|
| WARREN EDWARD ENGLISH, III, | ) | |
| | ) | |
| Petitioner-Appellant, | ) | |
| | ) | |
| v. | ) | |
| | ) | ON APPEAL FROM THE UNITED |
| MARY BERGHUIS, Warden, | ) | STATES DISTRICT COURT FOR THE |
| | ) | WESTERN DISTRICT OF MICHIGAN |
| Respondent-Appellee. | ) | |
| | ) | |
| | ) | OPINION |

FILED
Jul 10, 2013
DEBORAH S. HUNT, Clerk

Before: SUHRHEINRICH, STRANCH, and DONALD, Circuit Judges.

BERNICE B. DONALD, Circuit Judge. Petitioner Warren English, a state prisoner, appeals

the district court's dismissal of his petition for a writ of *habeas corpus* brought pursuant to 28 U.S.C.

§ 2254. A jury convicted English of third degree criminal sexual conduct in Michigan state court

("the trial court"). After his conviction, the trial court granted English's motion for new trial based

on a juror's failure to disclose during *voir dire* that she had been sexually molested as a child. The

Michigan Court of Appeals ("the court of appeals") reversed the trial court's grant of a new trial and

reinstated English's conviction and sentence. The Michigan Supreme Court denied review in a 3-2

decision. English then filed a *habeas* petition in federal district court ("the district court") in which

he raised several constitutional claims, including denial of his rights to due process and to a fair and

impartial jury. The district court dismissed English's petition pursuant to Rule 4 of the *Rules*

*Governing § 2254 Cases*, finding that English had failed to raise a meritorious federal claim. For the reasons set forth herein, we **REVERSE** the district court's judgment and **REMAND** for further proceedings consistent with this opinion.

I.

In 2006, English pled not guilty to third-degree criminal sexual conduct and proceeded to trial on allegations that he had non-consensual intercourse with a seventeen-year-old acquaintance who was asleep at his home following a party. He was convicted and sentenced to a prison term of twenty-one months to fifteen years. English appealed on several grounds not before this court and also filed a motion for new trial based on his discovery that a juror, identified as Juror A, had failed to disclose during *voir dire* that she had been the victim of sexual abuse as a child by a member of her household. The factual basis for the motion was set forth in the district court's opinion as follows[1]:

> Voir dire took place on January 9, 2006. In the trial court's opening statement to the jury pool, the trial court stressed the need for jurors to be free from bias, prejudice, or sympathy towards either side. (TR, p. 6). The trial court informed the jury pool that the purpose of voir dire was to choose a fair and impartial jury to hear the case. (TR, p. 7).
>
> The trial court further informed the jury pool that questions would be asked to determine if members of the jury pool had "any opinions or personal experiences that might influence you for or against the prosecution, the defendant, or any witnesses[."] (TR, p. 7). The Court invited the jury pool to ask if any individual did not hear or understand a question. (TR, p. 7). The Court also made clear that any of the potential jurors could ask for a private conference outside of the hearing of the other members of the jury pool. (TR, p. 7).

---

[1]The district court's summary of facts was drawn from the defendant's brief, without benefit of the entire state court trial record, particularly the jury voir dire transcript.

The members of the jury pool who had not been originally selected were asked to pay close attention to the questions because every question would not be repeated as jury selection progressed. (TR, p. 10).

One of the potential jurors indicated that she and her sister had been molested by their stepfather. (TR, p. 32). This disclosure was made in open court and within the hearing of all members of the jury pool. (TR, p. 32). A separate record was made, and the potential juror was excused for cause. (TR, pp. 33-34). In making this decision, the trial court remarked, within the hearing of the entire jury pool, that it was difficult in prosecutions for sexual crimes for a juror to be objective when that juror had herself or himself been sexually abused. (TR, p. 33). The trial court informed the jury pool that this juror had been excused for cause. (TR, p. 35.) The jury pool thus had every reason to believe that being a victim of sexual molestation would result in a potential juror being excused.

The trial court made the same observation when a second potential juror admitted that she would have trouble being impartial because her mother and her mother's sister had been sexually molested. (TR, p. 90).

Another potential juror informed the Court and the parties that his son had been accused of sexually molesting a child. (TR, p. 36). This disclosure was made in open court within the hearing of the rest of the jury pool. (TR, pp. 36-37). A separate record was made, and the potential juror was dismissed for cause. (TR, pp. 40-41).

A potential juror was excused for cause because that potential juror admitted that he might be more pre-disposed to believe the complainant or a member of her family. (TR, pp. 42-43). Another potential juror was interviewed in chambers and dismissed for cause because a cousin had sexually molested her and had gone to prison for his crime. (TR, pp. 45-46).

In sum, when a potential juror was excused for cause, the jury pool was usually informed that the juror had been dismissed for cause. (E.g., TR, pp. 47, 76).

The juror whose omission resulted in the New Trial Order was identified as Juror A. (TR, p. 103). Juror A stated that she had heard all of the questions that had been asked, and may have answered some of them differently. (TR, p. 103). Although offered an opportunity to discuss this issue, Juror A declined a private conference. (TR, pp. 103-104). Juror A disclosed that she had been the victim of a crime. (TR, p. 104). The crime was breaking and entering and had taken place some eleven years ago. (TR, p. 104). She also disclosed that her brother-in-law was a police officer in a nearby community. (TR, p. 104).

Juror A was the last juror to be chosen. (TR, p. 107). She had thus had the benefit of all the disclosures made by other jurors and had observed how jurors who had admitted to being a victim of sexual abuse had been excused for cause.

*** 

The New Trial Motion was based on allegations that two jurors, [including] Juror[] A . . . had not been forthright during voir dire. . . . A hearing was held on September 29, 2006. Juror A was called as the first witness. The trial court began by reading Juror A her rights, including the possibility of a perjury charge. (TR, pp. 5-6). Juror A informed the trial court that she was willing to testify without consulting with or having an attorney present. (TR, p. 7).

Juror A recalled that she had participated in defendant's jury selection. (TR, p. 7). She recalled the Court telling the jury pool that it was important that the pool be free from bias, prejudice, or sympathy for either side. (TR, p. 8). She also recalled the jury pool being told that they should listen to the questions posed to other jurors so as to learn when responses might be required. (TR, p. 8).

Although Juror A was the last juror called to the box for voir dire, she had paid attention to what had been happening to other members in the jury pool. (TR, p. 9). Juror A vaguely remembered a potential juror named Ms. Curtis who had informed the Court and the parties that she and her sister had been molested by their stepfather. (TR, p. 9). She also vaguely recalled that Ms. Curtis was invited into a conference with the Court and that after that conference, Ms. Curtis was excused for cause. (TR, p. 9).

She could not remember other jurors who had been excused for cause, including one who had admitted to being a victim of sexual molestation. (TR, p. 10).

Juror A did recall telling the Court that she had heard the answers to questions asked of other members of the jury pool. (TR, p. 11). Juror A recalled informing the Court that she had been the victim of a break-in. (TR, p. 12). She had also disclosed that her brother-in-law was a police officer. (TR, p. 13).

Juror A did admit that there was something that she did not disclose. (TR, p. 14). She explained that no one was prosecuted and that she did not talk with the police. (TR, p. 14). She and her abuser had since reconciled. (TR, p. 14).

Juror A testified that she was a victim of a sexual assault when she was 8 years of age. (TR, p. 15). She was assaulted by a member of her household. (TR, p. 15). She did not disclose the sexual assault during voir dire. (TR, p. 15).

4

On cross examination, Juror A testified that she was not trying to hide anything from the trial court or from the lawyers. (Tr, p. 16). When she spoke to the defense's private investigator, she thought that she had disclosed her sexual assault. (TR, p. 16). She now realized that she was mistaken and that she had not informed the trial court or the parties about her past sexual assault. (TR, p. 16).

Juror A denied that her past sexual experience had caused her to be biased against the defendant. (TR, p. 16). Juror A affirmed that the recollections were sometimes vague because of the amount of time that had passed between voir dire and the date of the hearing. (TR, p. 17). Juror A also affirmed that she had been paying attention during voir dire. (TR, p. 17).

Juror A testified that she thought there would have to have been a conviction or a report to the police before her past sexual experience needed to be disclosed. (TR, p. 18). Juror A opined that her past experience did not interfere with her ability to be a fair juror in defendant's case. (TR, p. 20).

In response to a question from the trial court, Juror A affirmed her prior belief that she had disclosed the sexual assault during voir dire. (TR, pp. 22-23).

The trial court found Juror A did not honestly answer a material question on *voir dire* and that it was not relevant that Juror A was convinced she was fair and impartial. The court found that Juror A had a duty to disclose the fact that she had been a victim of sexual abuse and she knew she had the duty to disclose the information. If Juror A had honestly answered the question, the court found, English's counsel or the court sua sponte would have excused her for cause. If that failed, defense counsel could have used a remaining peremptory strike. Accordingly, the court granted English's motion for a new trial based upon the failure of Juror A to disclose the fact that she had been the victim of sexual abuse. The State appealed.

On December 4, 2007, the court of appeals held that the trial court abused its discretion in granting English a new trial, finding that the trial court had not used the correct legal standard in analyzing English's claim. *People v. English*, No. 269887, 2007 WL 4245412 (Mich. Ct. App. Dec.

5

4, 2007) (per curiam*).* The court set aside the trial court's order and reinstated English's conviction and sentence.

English sought review by the Michigan Supreme Court, arguing, among other things, that he had been denied his Sixth and Fourteenth Amendment right to a fair and impartial jury. The Michigan Supreme Court denied the application, with two justices dissenting. *People v. English*, 743 N.W.2d 909 (Mich. 2008).

Having exhausted his direct appeals, English filed a request for relief from judgment with the trial court, which the court denied. In its order the trial court offered these reflections:

> I had granted the motion for new trial because I felt that the parties conducted the voir dire under the belief the jurors were acting pursuant to their oath and would "answer truthfully, fully and honestly all the questions you will be asked." I also found that despite the jurors [sic] statement that her prior undisclosed experience of being a victim in a sexual assault did not bias her while sitting as a juror in this sexual assault case, I thought it may subconsciously. In addition, even if she was not biased and may not have been excused for cause the attorneys may have used a preempting [sic] challenge to excuse her but was [sic] denied this opportunity by the jurors [sic] failure to comply with the oath she took.
>
> All of these arguments were made to and disregarded by the Court of Appeals and Supreme Court. They also did not find it necessary to remand the issue to the trial court for further fact finding or rulings. I do not have to agree with the reasoning of the appellate courts but I do have to follow their rulings.

English then filed a § 2254 *habeas* petition. The district court summarily dismissed the petition on December 21, 2009 under Rule 4 of the *Rules Governing § 2254 Cases,*[2] finding that

---

[2]**Rule 4. Preliminary Review; Serving the Petition and Order:** The clerk must promptly forward the petition to a judge under the court's assignment procedure, and the judge must promptly examine it. If it plainly appears from the petition and any attached exhibits that the petitioner is not entitled to relief in the district court, the judge must dismiss the petition and direct the clerk to notify the petitioner. If the petition is not dismissed, the judge must order the respondent to file an answer, motion, or other response within a fixed time, or to take other action the judge may order. In every case, the clerk must serve a copy of the petition and any order on the respondent and on the attorney

English's federal claims lacked merit on their face. We granted a Certificate of Appealability only as to the fair and impartial juror issue. Our analysis of that issue leads us to reverse and remand.

## II.
### A.

We review *de novo* a district court's legal conclusions in a *habeas* petition ruling. *Lucas v. O'Dea*, 179 F.3d 412, 416 (6th Cir. 1999).

The question of a challenge of a prospective juror for bias is a "factual issue" subject to § 2254(d), which requires a federal reviewing court to accord any findings of the state courts on factual issues a "presumption of correctness." *Wainwright v. Witt*, 469 U.S. 412, 426 (1985) (citing *Patton v. Yount*, 467 U.S. 1025 (1984).

### B.

The Sixth Amendment, applicable to the states through the Fourteenth Amendment, provides that "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury . . . ." U.S. CONST. amend. VI. In *McDonough Power Equipment, Inc. v. Greenwood*, the Supreme Court recognized that the jury selection process "serves to protect that right by exposing possible biases, both known and unknown, on the part of potential jurors," and that the "necessity of truthful answers by prospective jurors if this process is to serve its purpose is obvious." 464 U.S. 548, 554 (1984). "The motives for concealing information may vary, but only

---

general or other appropriate officer of the state involved.

those reasons that affect a juror's impartiality can truly be said to affect the fairness of a trial." *Id.* at 555.

Declaring that a litigant is "entitled to a fair trial but not a perfect one," *id.* at 553, the *McDonough* Court held that a defendant who discovers that a juror has withheld material information is entitled to a new trial only if the juror's failure to disclose denied the defendant his right to an impartial jury. *Id.* at 556. In order to obtain a new trial based on a juror's non-disclosure during *voir dire*, the defendant "must first demonstrate that a juror failed to answer honestly a material question on *voir dire,* and then further show that a correct response would have provided a valid basis for a challenge for cause." *Id.*

Challenges for cause allow the removal of panel members only "on a narrowly specified, provable and legally cognizable basis of partiality," *Swain v. Alabama*, 380 U.S. 202, 220 (1965), *overruled on separate grounds by Batson v. Kentucky*, 476 U.S. 79 (1986), "such as a personal relationship with a party, witness, or attorney in the litigation, or a biased state of mind concerning a party or issue in the case." *United States v. Annigoni*, 96 F.3d 1132, 1138 (9th Cir. 1996), *overruled on separate grounds by Rivera v. Illinois*, 556 U.S. 148 (2009). A finding of bias is thus central to the *McDonough* test: "Demonstrated bias in the responses to questions on *voir dire* may result in a juror being excused for cause." *McDonough*, 464 U.S. at 554.

The *McDonough* standard applies in cases where a juror deliberately conceals information as well as in cases of "mistaken but honest" responses to *voir dire* questions. *Id.* at 555. Only when a juror is found to have deliberately concealed material information, however, may bias be inferred.

8

If information is not concealed deliberately, "the movant must show actual bias." *See, e.g.*, *Zerka v. Green*, 49 F.3d 1181, 1186 (6th Cir. 1995) (emphasis omitted). "Actual bias is 'bias in fact' and focuses on the record at voir dire*." Johnson v. Luoma*, 425 F.3d 318, 326 (6th Cir. 2005).

C.

In determining whether to issue a writ of *habeas corpus*, the provisions of the Antiterrorism and Effective Death Penalty Act ("AEDPA") apply and serve to significantly constrain the federal courts' review of a state court's decision. 28 U.S.C. § 2254 (2006). Under § 2254(d), a federal court may not grant relief from a state court conviction unless the state-court adjudication "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."

A state court's legal decision is "contrary to" clearly established federal law under § 2254(d)(1) "if the state court arrives at a conclusion opposite to that reached by the [Supreme Court] on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000). An "unreasonable application" occurs when the state court correctly identifies the correct legal principle from Supreme Court precedent "but unreasonably applies that principle to the facts" of the case before it. *Id.* at 413.

9

Before a reviewing court reaches the question of the reasonableness and conformity to relevant precedent of the state court adjudication, however, it must first confront a more primal question: whether the defendant's claim was actually adjudicated by the state courts. AEDPA's deferential standard of review applies only to claims that were actually adjudicated on the merits in state court proceedings. *Robinson v. Howes*, 663 F.3d 819, 822-23 (6th Cir. 2011). "Claims that were not adjudicated on the merits in State court proceedings receive the pre-AEDPA standard of review: *de novo* for questions of law . . . and clear error for questions of fact." *Id.* at 823 (internal quotation marks omitted).

This question of adjudication is of particularly fundamental importance to the case before us, as a close examination of its peculiar procedural history reveals. Following a hearing in which English claimed that his federal and state constitutional rights to an impartial jury were violated, the state trial court granted English's motion for a new trial. The trial court expressly found that Juror A had deliberately concealed material information during *voir dire*, but the court did not make an explicit finding that Juror A had been biased.[3] Due to the material concealment, a finding of bias could have been readily inferred under *McDonough*. *See Zerka*, 49 F.3d at 1186. But neither the trial court nor English was particularly concerned with bias, since, under the prevailing state law as

_____

[3] The dissent takes inconsistent positions on this point. Initially, the dissent strongly asserts that the trial court made a factual finding that Juror A had been fair and impartial and urges us to give this finding a presumption of correctness. The record shows, however, that the trial court merely recounted Juror A's statements that she *believed* that her experience of sexual abuse would not interfere with her ability to be a fair juror. The court did not make an express finding that Juror A was, in fact, impartial or unbiased. The dissent takes a different tack in section C, pointing out that English had an opportunity at the state evidentiary hearing to develop a factual predicate for actual bias but "chose not to have the state trial court make the requisite factual finding." The dissent cannot have it both ways, and we think the most reasonable reading of the record is that the state trial court did not make a factual finding of actual bias.

10

both understood it, such a showing was not a necessary element of English's claim. Both embraced as dispositive *People v. Manser*, 645 N.W.2d 65, 69 (Mich. Ct. App. 2002) (per curiam), which observed that "the seating of a juror who withholds information that should have been produced as a result of questioning during the voir dire presents too great a risk that a defendant will not be provided an impartial jury."

Consequently, the post-conviction hearing on English's motion for a new trial touched upon, but did not fully decide, the juror bias question central to the 6th Amendment claim. Instead, the court based its decision on its general observation that a prospective juror in a criminal case who has been the victim of a crime similar to the one for which the defendant is on trial is routinely challenged and excused for cause. And the court concluded that the juror's failure to disclose was sufficient to find that English's right to a fair and impartial jury had been violated—a conclusion that arguably implies but does not state that the juror was biased.

The court of appeals understandably found the trial court's observations insufficient grounds upon which to grant a new trial. The court of appeals took particular exception to what it perceived to be the erroneous standard that the trial court applied to reach that conclusion. The court stated that "the only basis for [the trial court's] finding was that all victims of sexual abuse would have been excused for cause, even if the trial court had to do so sua sponte." *English*, 2007 WL 4245412 at *3. The court viewed the trial judge's statement as encapsulating a "belief that a victim of sexual abuse should automatically be excused from sitting on a criminal sexual conduct jury." *Id.* at *1. The court found "no basis in law" for such a rule of "automatic exclusion." *Id.* at *3.

11

The court stressed that, under Michigan law, "when information potentially affecting a juror's ability to act impartially is discovered after the jury is sworn, the defendant is entitled to relief only if he can establish (1) that he was actually prejudiced by the presence of the juror in question or (2) that the juror was properly excusable for cause." *Id*. at \*2 (citing *People v. Daoust*, 577 N.W.2d 179, 184 (Mich. Ct. App. 1998), as the controlling authority).[4] Applying this two-prong test, the court of appeals first concluded that "defendant makes no showing that he was prejudiced by the presence of the challenged juror nor did the trial court make any such finding of prejudice." *Id.* at \*3. Turning then to the exclusive focus of the trial court, the appeals court found that "[b]ecause the trial court did not identify any proper basis for excluding the juror for cause, it erred in granting defendant's motion for new trial." *Id.* On this ground, it set aside the trial court's order and reinstated the conviction and sentence. *Id.*

Thus, the 2-1 opinion elucidated the proper state law standard at the time and highlighted the trial court's error in applying the wrong standard. In reversing the trial court's erroneous application of state law without remand to the trial court, however, the court of appeals left unresolved whether Juror A was biased or otherwise excusable for cause, as required under both *McDonough* and the second prong of *Daoust*.

The appeals court's decision unambiguously reversed the trial court's grant of a new trial, but whether its decision should be considered an adjudication of English's Sixth Amendment claim

---

[4]Both *Daoust* and *Manser*, the case relied upon by English in his motion for a new trial, have since been overruled by *People v. Miller*, 759 N.W.2d 850, 863 (Mich. 2008) (holding that a new trial is not always required whenever a juror would have been excusable for cause, since the proper inquiry is whether the defendant was denied his right to an impartial jury).

for AEDPA purposes is a question without an easy answer. Two recent Supreme Court decisions offer guidance in dealing with the perplexing question presented here: under what circumstances a state court decision should be deemed an adjudication of the federal law claims raised in a habeas petition.

In *Harrington v. Richter*, the defendant had petitioned the California Supreme Court for a writ of habeas corpus, claiming, among other things, ineffective assistance of counsel. 562 U.S. —, 131 S.Ct. 770, 784-85 (2011). The state court had denied the petition in a one-sentence ruling. The Ninth Circuit Court of Appeals, sitting *en banc,* cited its own precedent for the proposition that where the state court has not explained its reasoning the reviewing court must conduct an independent review of the record to determine whether the state court's decision was objectively reasonable. *Richter v. Hickman*, 578 F.3d 944, 951 (9th Cir. 2009). The court concluded that the state court decision was not a reasonable application of Supreme Court precedent and reversed the district court's denial of the writ of habeas corpus on that ground. *Id.* at 953.

The Supreme Court reversed, holding that the Ninth Circuit had improperly conducted a *de novo* review, rather than first addressing the threshold issue under § 2254(d)(1): whether fairminded jurists could disagree that the arguments or theories which supported or could have supported the court's decision are inconsistent with the holding in a prior decision of the Supreme Court. *Richter*, 131 S.Ct. at 786. As to the subsidiary question of adjudication, the Court declared that the defendant's claims should be regarded as adjudicated, the brevity of the state court's order notwithstanding: "[Sec.] 2254(d) does not require a state court to give reasons before its decision can be deemed to have been 'adjudicated on the merits.'" *Id.* at 785. "When a federal claim has been

presented to a state court and the state court has denied relief, *it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary*." *Id.* at 784-85 (emphasis added).

Even more recently, in *Johnson v. Williams*, a state appeals court was faced with a claim that the trial court's dismissal of a juror had violated defendant's rights under both the Sixth Amendment and the California Penal Code. ⸺ U.S. ⸺, 133 S.Ct. 1088 (2013). The defendant's brief did not clearly distinguish between these two lines of authority. *Id.* at 1093. The appeals court held that the juror had been properly dismissed for bias, citing a mix of state law and Supreme Court precedent in support. *Id.* The decision did not expressly state whether it was deciding the state law claim, the federal law claim, or both. *Id.*

Reviewing the denial of the defendant's habeas petition, the Ninth Circuit declined to afford AEDPA deference to the California Court of Appeal's decision, finding that "when a court devotes many pages to explaining its reason for denying one claim, and then says absolutely nothing that even acknowledges the existence of a second claim, there is reason to think that it is more likely that the court simply neglected the issue and failed to adjudicate the claim." *Williams v. Cavazos*, 646 F.3d 626, 639 (9th Cir. 2011) (internal quotation marks omitted). The court concluded that it was "obvious, not theoretical or speculative, that Williams's constitutional claim was not adjudicated at all, and so the *Richter* presumption is overcome." *Id.* (internal quotation marks omitted).

The Supreme Court reversed, holding that the reasoning in *Richter* applies to a state court opinion that addresses some but not all of a defendant's claims, as well as a state court order that does not expressly address any of defendant's claims: "When a state court rejects a federal claim

14

without expressly addressing that claim, a federal habeas court *must presume that the federal claim was adjudicated on the merits—but that presumption can in some limited circumstances be rebutted.*" *Williams*, 133 S.Ct. at 1096 (emphasis added). The Court held that a number of factors in the case before it supported the presumption that the federal claims had been adjudicated: the close similarity between the state law and Sixth Amendment claims; the state appeals court's reliance on Supreme Court precedent, as well as state case law which discussed Supreme Court precedent; and the fact that the defendant treated her state and federal claims as interchangeable. *Id.* at 1098-99. The presumption must be rebuttable, the Court cautioned, because "an irrebuttable presumption that state courts never overlook federal claims would occasionally miss the mark." *Id.* at 1097.

The circumstances of the present case contrast with these Supreme Court precedents. Unlike the state court's decision in *Richter,* the Michigan Court of Appeals' decision did provide a richly developed analysis. But, rather than a decision on the merits of English's state law and Sixth Amendment claims, the decision was a judgment on the trial court's misunderstanding of the law. In contrast to *Williams*, the Michigan court did not make a determination as to whether English was denied his right to a fair and impartial jury, either under the applicable standard set forth in *McDonough* or under state law. By simply negating the trial court's ruling, without making its own finding as to whether Juror A was biased or otherwise excusable for cause, and without remanding for further proceedings under the proper legal standard, the court of appeals appears to have left English's Sixth Amendment and state law claims unresolved as to their merits.

15

The dissenting opinions from both the Michigan Court of Appeals and the Michigan Supreme Court support such a conclusion. The dissenting judge on the appeals court panel, Judge White, agreed with the majority that the trial court had applied an improper standard and that "a victim of sexual assault is not automatically excusable for cause." *English*, 2007 WL 4245412 at *5. But, she pointed out, "it does not follow that the juror was not, in fact, excusable for cause," and she dissented on grounds that the case should be remanded to the trial court for final adjudication, rather than simply reinstating the verdict. *Id.* She aptly described what an adjudication of English's juror bias claim should rightly entail:

> A trial court is not obliged to accept a juror's declaration that the juror is not biased if there is reason to doubt the assertion. Rather, a trial court must make its own determination, taking into account all the circumstances, including the juror's statements and demeanor, whether the juror can be fair and impartial. Here, the trial court should make a determination on remand, considering the circumstances of the voir dire, the later disclosure, the credibility of the juror's explanation and declaration of impartiality, and any other relevant factors.

*Id.*

Similarly, the dissent by two Justices of the Michigan Supreme Court points to the issue left undecided: "[We] would remand this case to the trial court for reconsideration under the appropriate standard, as explained in the partially dissenting opinion in the Court of Appeals, of whether the juror was excusable for cause." *English*, 743 N.W.2d at 910.

Although English's counsel misapprehended *Manser*'s application to the case, the evidence presented in support of his claim was substantial and entirely pertinent to the determination of implied bias under *McDonough:* the juror's history of sexual abuse, her withholding of this history, and her testimony as to why this information was withheld. Thus, while counsel's legal argument

16

may have been markedly different had he possessed a firmer understanding of the law underlying his Sixth Amendment claim, it is not clear that the evidence presented would have been, or should have been, substantially different. Consequently, we cannot embrace our dissenting colleague's conclusion that English did not meet his evidentiary burden of showing bias and is therefore not entitled to habeas relief. We conclude instead that whether English has met this burden of proof has yet to be decided: it was not decided by the trial court because its grant of a new trial, based upon a legal standard contrary to both state law and Supreme Court precedent, was reversed, and it was not decided by the appeals court because it reversed without remand for further fact-finding by the trial court.

D.

In the district court's view, the central issue raised by English's habeas petition was whether the decision of the court of appeals constituted a reasonable application of established Supreme Court precedent. Finding that the state law applied by the court of appeals was consistent in its central inquiry with the federal standard, the district court deferred to the state court's judgment and summarily dismissed the petition. Missing from the district court's analysis is a determination of whether English's claims had been adjudicated by the state court. Without such a determination, the deference to the state court by the district court was inappropriate.

The district court rendered its decision in 2009, before the Supreme Court had decided *Richter* and *Williams*. Sixth Circuit case law at that time was fairly consistent in holding that a finding of adjudication required an explicit assessment by the state court of the federal claim at issue. *See, e.g., Danner v. Motley*, 448 F.3d 372, 376 (2006) (finding no adjudication where the Kentucky

17

Supreme Court examined only state law in its analysis); *Lyell v. Renico*, 470 F.3d 1177, 1182 (2006) (conducting de novo review because state court did not assess the merits of a claim properly raised in a habeas petition); *Newton v. Million*, 349 F.3d 873, 878 (6th Cir. 2003) (same); *but c.f. Dennis v. Mitchell,* 354 F.3d 511, 521 (6th Cir. 2003) (holding that the state court's decision was a reasonable application of *McDonough* although the Ohio Supreme Court made no mention of *McDonough* in its decision); *Baker v. Craven,* 82 F. App'x 423, 428 (6th Cir. 2003) (applying AEDPA deference even though the state court had analyzed the federal claims only under state law). Under this precedent, the district court's deference to the state court under AEDPA would almost certainly have been ruled by this court to be reversible error.

In *Richter* and *Williams*, the Supreme Court altered the legal terrain by establishing a rebuttable presumption that the defendant's claims were adjudicated on the merits by the state court. In the case before us, the plain language of the state court's opinion itself appears to rebut the presumption. Unlike in *Richter*, the state appellate court's opinion was carefully reasoned and left no uncertainty as to the basis for its holding. Unlike in *Williams*, the peculiarly-worded holding addressed neither the merits of the defendant's state claim nor his federal claim, and allowed no further proceedings to resolve those claims. Whether these distinguishing features of the state court's treatment of English's appeal are sufficient to rebut the presumption of adjudication is a subtle question of law which must be decided as a matter preliminary to any other inquiry.

III.

Since AEDPA's deferential standard of review applies only to claims that were adjudicated on the merits in state court proceedings, we conclude that the district court's deference to the

18

Michigan courts was an improper basis for denying English's habeas petition without the requisite determination that his federal claim had been adjudicated on the merits. We further conclude that, given the complex procedural, evidentiary, and constitutional questions raised by the petition, it was an inappropriate candidate for summary dismissal under Rule 4, without full briefing by the parties and without the benefit of the entire state court record.

We must, therefore, return the matter to the district court for a determination of the adjudication question, applying the *Richter/Williams* rebuttable presumption. The court's further proceedings should be based upon full briefing by the parties and a review of the complete state court record. On this basis, if the court determines that the presumption of adjudication is rebutted, it must conduct *de novo* consideration of the merits of English's Sixth Amendment claim regarding the misconduct of Juror A. If the court should determine that the presumption is not rebutted and AEDPA deference is warranted, the court must still evaluate English's Sixth Amendment claim through the AEDPA lens, applying the *McDonough* test to determine whether English was denied his Sixth Amendment right to be tried by a fair and impartial jury, as that right is elucidated by Supreme Court precedent.

Based upon the foregoing, we VACATE and REMAND the petition to the district court for further proceedings consistent with this opinion.

**SUHRHEINRICH, J., dissenting**:

## I.

Because I believe that Petitioner did not meet his burden of establishing the basis for a new trial under *McDonough Power Equipment Inc. v. Greenwood*, 464 U.S. 548 (1984), and the state trial court made the requisite finding for purposes of the federal claim that Juror A was not biased in any event, I dissent. I also think this court lacks authority to grant the relief provided by the majority.

## A.

As the majority observes, in his motion for a new trial, Petitioner claimed violations of both his federal and state constitutional rights to an impartial jury.

As the majority acknowledges, in order to obtain a new trial based on a juror's nondisclosure of a material fact during *voir dire*, the petitioner must demonstrate that the juror's nondisclosure would have provided a valid basis for a challenge for cause, *McDonough*, 464 U.S. at 556, such as actual bias, *Zerka v. Green*, 49 F.3d 1181, 1186 (6th Cir. 1995).

As the majority points out, the prevailing state law as understood by Petitioner and the trial court differed from the federal standard under *McDonough*. Thus, it was incumbent on Petitioner to demonstrate not only that Juror A was excusable for cause for purposes of his state law claim, but also to demonstrate bias to support his federal claim.

20

In arguing for a new trial at the evidentiary hearing on his motion for a new trial, Petitioner asserted that his "argument and position is that his federal and state constitutional rights to an impartial jury were violated when jurors did not disclose, during voir dire, information that would have led to those jurors either being challenged for cause, or alternatively peremptorily challenged." Mot. for New Trial, Dec. 8, 2006, at 7. Petitioner argued that "it is irrelevant whether the admission was intentional or accidental," *id.* at 9, and that, as set forth in *People v. Manser*, 645 N.W.2d 65 (Mich. App. 2002), "there is no need to show that the Defendant was prejudiced, and therefore it is irrelevant whether Juror A deliberated without being affected by her prior sexual assault." Mot. for New Trial at 10-11.

The prosecutor in turn argued that under Michigan law, a juror's personal experience with a similar crime does not automatically render someone excusable for cause: rather the court must also assess whether the individual juror has any bias or problems with being impartial. *Id.* at 20. The prosecutor pointed out that Juror A testified that she had acted in an impartial manner, both in her affidavit and her testimony at the evidentiary hearing. *Id.* at 22. The prosecutor noted too that Juror A's experience was not similar to the victims in the case at issue. *Id.* at 23. Finally, the prosecutor observed that Juror A had not lied. *Id.* at 24.

The trial court agreed with Petitioner and granted the motion for a new trial, believing itself bound by *Manser*. *Id.* at 28. The court stated in critical part:

> I'm going to issue my decision now . . . . I'm going to grant the motion for a new trial. I think I'm bound by *Manser*. It's almost exactly on point in regards to Juror A.

There was a material omission on the part of Juror A. By her own testimony during the September special hearing, her belief was that she had disclosed it. She knew it was important information for the Court and she honestly thought that she had told the Court that she had been a prior victim of a criminal sexual conduct–a sexual assault by her father.

It was when she was shown the transcript that she saw that she hadn't done it. I believe she testified that she was surprised because she knew it was important, and I think she also said that she was surprised that having disclosed that she would have been a juror. But she also felt that she was fair and impartial, and that's where I don't think that the case law supports that.

. . . .

*The fact that Juror A is convinced that she was fair and impartial in this case, I don't believe is relevant.* I think that she had the duty to disclose it. She–she knew she had the duty to disclose it. In her own words, the thought she had.

So, it's not a matter that it wasn't a question that wasn't asked, it was a question that was asked, and she thought she answered it.

. . . .

And as a rule they're all excused due to their prior experiences, because although they may be qualified as juror [sic] and may feel that they'd be fair and impartial, it's felt that it would be better to have somebody without those experiences to sit on the jury. They're usually excused for cause or by peremptory challenge.

*Manser* indicates that that failure to disclose basically violated Mr. English's right to a fair and impartial jury–to have a jury that disclosed it.

. . . .

Now that–so, for that reason, I would grant the Defendant's motion for a new trial because it was a criminal sexual conduct case; she'd been a prior victim of criminal sexual conduct; she knew it was important. She thought she'd answered it, but she hadn't. If she had answered it,[ trial counsel] or the Court, sua sponte, would have excused her for cause, or [trial counsel's] declaration is that he would have asked to have her excused, or would have used a peremptory.

22

*Id.* at 28-31(emphasis added).

This was error under state law, as pointed out by the state court of appeals. *See People v. English III*, No. 269887, 2007 WL 4245412, at *3 (Mich. App. Dec. 4, 2007) (per curiam) (holding there is no basis in state law for an automatic exclusion of victims of sexual abuse in criminal sexual conduct cases). Thus, Petitioner did not establish "a valid basis for a challenge for cause" under then-existing state law.[5]

But, as noted, Petitioner also presented a federal claim, which required a showing of actual bias. Petitioner did not make this showing. In fact, although the majority disputes this, the trial court actually credited—albeit while ruling on the state law claim—Juror A's testimony on this point: "But she also felt that she was fair and impartial, and that's where I don't think that the case law supports that. . . . The fact that Juror A is convinced that she was fair and impartial in this case, I don't believe is relevant." Mot. for New Trial at 28-30. Not only did Petitioner not challenge this finding, he never asked the trial court to make a factual determination that Juror A was not credible when she said she was not biased and had been a fair and impartial juror despite her prior experience. *See Dennis v. Mitchell*, 354 F.3d 511, 520 (6th Cir. 2003) (stating that an individual juror's bias at

---

[5]Had Juror A testified that her past experience affected her judgment, or that she had not been a fair and impartial juror as a result of her past experiences, Petitioner would have established actual bias as well as "a valid *basis* for a challenge for cause." But Juror A testified under oath to just the opposite: On direct examination by Petitioner at the evidentiary hearing on the motion for a new trial, Juror A testified that "What had happened to me years ago happened to me years ago and I don't have a problem with it. I don't - - never even thought for a minute anything was comparable. No one was prosecuted. I didn't talk to the police." Special Hearing, Sept. 29, 2006, at 14. On cross-examination the prosecutor asked: "Did your prior victimization in any way create a bias for you or a problem with you in evaluating the case against Warren English III?" *Id.* at 16. Juror A responded: "No." *Id.*

23

a state criminal trial is a question of fact) (citing *Patton v. Yount*, 467 U.S. 1025, 1036 (1984)). In other words, Petitioner did not establish *actual* bias on the part of Juror A, instead relying exclusively on the legal argument that Juror A's prior experience was an automatic basis for a challenge for cause. *McDonough* squarely places that burden on the shoulders of the party seeking the new trial. *See McDonough*, 464 U.S. at 556. Petitioner did not meet that burden, and as a result, did not establish a Sixth Amendment violation entitling him to a new trial under *McDonough*.

In fact, this is basically what the district court held:

> In both the state appellate courts and in his habeas application, Petitioner has made no effort to demonstrate actual bias by Juror A. Instead, his brief focuses exclusively on whether the juror would have been excused for cause by the trial court presiding over this case-not whether excuse for cause was legally required by the circumstances. Petitioner claims that, because the trial court acted to remove all jurors who reported a close connection to sexual abuse, it would also have excused Juror A. In the alternative, Petitioner argues that, had the court not excused Juror A for cause, Petitioner would have exercised a peremptory challenge.

> The Supreme Court expressly rejected the notion that the societal resources invested in a trial should be wasted simply in order to "recreate the peremptory challenge process because counsel lacked an item of information which objectively he should have obtained from a juror on voir dire examination." *McDonough*, 464 at 555. For the same reasons, the fact that the trial judge was routinely using a loose standard for finding cause does mean that Petitioner is entitled to the application of such a loose standard. The Constitution protects only against substantial unfairness, not against the loss of a tactical advantage. *See id.* (rejecting concept of abstract perfection at trial); *Smith v. Phillips*, 455 U.S. 209, 217, 102 S.Ct. 940, 71 L.Ed.2d 78 (1982) ("[D]ue process does not require a new trial every time a juror has been placed in a potentially compromising situation.").

> Here, the sexual abuse in issue was significantly different from the sexual assault charged and was remote in time. Moreover, the state court found that the juror was not intentionally dishonest and had expressed her belief that she was impartial.

24

Further, Petitioner introduced no evidence of actual bias. On these facts, Petitioner has failed to show the sort of extreme circumstances exist that would warrant dismissal for cause. *Zerka*, 49 F.3d at 1186 n. 7.

*English v. Berghuis*, No. 1:09-cv-1012, 2009 WL 5171885, at *11-12 (W.D. Mich. Dec. 21, 2009). (applying AEDPA deference). The Michigan Court of Appeals also held that Petitioner made no showing that he was prejudiced by Juror A's presence at trial. *People v. English*, No. 269887, 2007 WL 4245412, at *3 (Mich. App. 2007) (per curiam).

In short, under a de novo standard of review, Petitioner did not meet his burden and is not entitled to relief by a federal habeas court. The relief provided by the majority here is improper and in disregard of state sovereignty of proper use of the writ of habeas corpus. *See, e.g., Engle v. Isaac*, 456 U.S. 107, 128 (1982) ("The States possess primary authority for defining and enforcing the criminal law. In criminal trials they also hold the initial responsibility for vindicating constitutional rights. Federal intrusions into state criminal trials frustrate both the States' sovereign power to punish offenders and their good-faith attempts to honor constitutional rights.").

**B.**

As noted, the state trial court judge also made the requisite factual finding that Juror A had been a fair an impartial juror, although perhaps not in a format suitable to the majority's liking. Thus, I just do not see the point in vacating and remanding for further proceedings because the existing record is sufficient to determine whether Petitioner's Sixth Amendment right to be tried by a fair and impartial jury was protected. Juror A testified that her prior victimization did not create a bias in her or affect her judgment in evaluating Petitioner's case, *see supra*, at n.1, and the state

25

trial court judge credited her belief that she had been fair and impartial. As the majority knows, that factual finding is entitled to a presumption of correctness. *See Wainwright v. Witt*, 469 U.S. 412, 326 (1985) (citing *Patton v. Yount*, 467 U.S. 1025 (1984)). Based on that presumed correct factual finding by the state trial court judge, I do not see how any judge could reach any legal conclusion but that Juror A was not actually biased.

In a disingenuous attempt to get around the law of habeas, the majority "offers" the state trial court's "reflections," found in the state trial court's "Order Denying Defendant's Request for Relief From Judgment." "Reflections," is the operative word here, because as the majority is constrained to point out, the state trial court itself noted Defendant's motion addressed arguments "made to and disregarded by the [Michigan] Court of Appeals and [Michigan] Supreme Court." To the extent that the state trial court "thought" something different than what it "stated" in its ruling on English's motion for a new trial, it is not legally relevant and an improper basis for habeas relief.

### C.

Finally, the majority avoids explaining its authority to order the district court to evaluate the merits of English's Sixth Amendment claim regarding the misconduct of Juror A (whether de novo or with AEDPA deference). It cannot utilize 28 U.S.C. § 2254(e)(2), which provides that:

> (2) If the applicant has failed to develop the factual basis of a claim in State court proceedings, the court shall *not* hold an evidentiary hearing on the claim *unless the applicant shows that*--
>
> (A) the claim relies on--
>
> (i) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or

26

(ii) *a factual predicate that could not have been previously discovered through the exercise of due diligence*; and

(B) the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense.

28 U.S.C. § 2254(e)(2) (emphases added). As discussed above, and as reflected in the majority's recitation of the facts underlying the evidentiary hearing on the motion for a new trial, Petitioner had ample opportunity at the evidentiary hearing to develop a factual predicate for actual bias—and chose not to have the state trial court make the requisite factual finding. In fact, the majority admits that "the evidence presented in support of [English's] claim was substantial and entirely pertinent to the determination of implied bias under *McDonough*." In other words, the "factual predicate" was clearly discovered, so § 2254(e)(2) not only fails to provide authority for the majority's ruling, it actually precludes it.

Notwithstanding, the majority thinks it can order further proceedings, even though English had the opportunity to make his Sixth Amendment argument at the hearing on his motion for a new trial, because "counsel's legal argument may have been markedly different had he possessed a firmer understanding of the law underlying his Sixth Amendment claim." Not surprisingly, it fails to provide any authority for this proposition. The simple truth is that English failed to properly present and preserve his federal Sixth Amendment claim in the state court, despite the fact that he raised the issue there, and was given ample opportunity to develop it and to meet his burden of proof under *McDonough*. The majority may be unhappy about that fact, but it does not have the authority in habeas jurisdiction to recreate the state court record.

27

## II.

For these reasons, I respectfully dissent.